543 P.2d 449

**The STATE of Arizona, Appellee,**

v.

**Donald C. COX, Appellant.**

**No. 2 CA–CR 644.**

Court of Appeals of Arizona,
Division 2.

Dec. 16, 1975.

Rehearing Denied Jan. 22, 1976.

Review Denied Feb. 18, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Georgia Butcher Ellexson, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Charles L. Weninger, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

The pivotal question in this case is whether venue was properly laid in Pima County.

Appellant was indicted for and convicted of attempted murder, second degree. The basis for the charge was his attempt to procure the services of a "hit man" to execute his former wife. Appellant conveyed his interest in having either his ex-wife or her paramour executed to a private detective who told appellant he was not personally interested, but could recommend someone who was. The person recommended was a Tucson Police Officer who led appellant to believe he was the type of character who could accomplish appellant's wishes.

An initial meeting between appellant and the private detective took place in early April of 1974 at Ye Old Lantern restaurant in Tucson, Pima County, Arizona. At this meeting appellant indicated his interest in having his ex-wife's paramour executed. The private detective acted interested in obtaining the "contract" for a price of be-

tween $2,000 and $5,000 subject to the condition that appellant pay half in advance. A further meeting was arranged for later that evening at a bar in Pinal County. At this meeting appellant attempted to cash a check with the bartender, but was unsuccessful. The meeting concluded without any further plans being made.

The detective notified the Tucson Police Department of the two meetings and it was suggested that an undercover police officer be introduced to appellant. A telephone call was placed from the police building to appellant and a meeting between appellant and the police officer was arranged. The telephone conversation was recorded.

Appellant and the police officer met, as arranged, at Ye Old Lantern restaurant. At this meeting, appellant discussed the possibility of having both the ex-wife and her paramour executed. He gave the police officer a physical description of his ex-wife, her home address, a description of her vehicle and the license number, and the address of her place of employment. He also described the physical appearance of the paramour, his home address, and the bars he was known to frequent. It was agreed that the police officer would keep in touch with appellant so that more specific plans could be worked out when appellant could raise the money.

The police officer made several telephone calls to appellant during May and June to determine whether or not he had raised the money and was informed each time that appellant had not been able to do so. Another meeting between appellant and the police officer took place on July 18 at a restaurant in Pinal County. At this meeting, appellant decided that his ex-wife was to be killed, the price of the "contract" was to be $2,000 plus $250 to enable the officer to purchase an untraceable weapon. The officer was also to burn down appellant's house to enable him to collect the insurance proceeds. The price for this "torch job" was to be $1,000. The officer agreed to accept the $250 as a down payment and payment of the balance after ap-

pellant received the insurance proceeds on the house.

The officer telephoned appellant the following day and a meeting at the same restaurant in Pinal County was arranged. When the officer arrived, appellant asked him to follow him to a place in the desert where the $250 was exchanged. The officer accepted the money and appellant was subsequently arrested. The police officer wore a sending device during all encounters with appellant and all of their conversations were recorded.

Appellant's principal contention is that the Pima County Grand Jury and the Pima County Superior Court were without jurisdiction to indict and try him since the crime, if any, took place entirely in Pinal County.

■ Article 2, Sec. 24, of the Arizona Constitution provides:

"In criminal prosecutions, the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, . . . ."

Venue in criminal cases is thus jurisdictional. *Sam v. State*, 33 Ariz. 383, 265 P. 609 (1928); *State v. Howe*, 69 Ariz. 199, 211 P.2d 467 (1949).

In furtherance of this constitutional provision the legislature passed A.R.S. Sec. 13–1503:

"In all criminal prosecutions the trial shall be in the county where the offense was committed or consummated unless otherwise provided by law."

The purpose of such a constitutional provision was stated in *State v. Bunker*, 38 Kan. 737, 17 P. 651, 653 (1888):

" * * * The design of this constitutional provision seems to be to secure to the accused a trial by a jury from the vicinage where the crime is supposed to have been committed, so that he may have the benefit of his own good character and standing with his neighbors,—if these he has preserved,—and also of such knowledge as the jury may possess

of the witnesses who give evidence before them. * * *"

Without such a constitutional provision the legislature is free to fix the venue of criminal prosecutions in a county other than that in which the crime is committed. *People v. Lee*, 334 Mich. 217, 54 N.W.2d 305 (1952).

The legislature of this state has also enacted A.R.S. Sec. 13–1504(B) which reads:

"Where several acts are requisite to the commission of an offense, the trial may be in any county in which any of such acts occurs."

The purpose of such a statute is the abrogation of the rule of the common law that when an offense was comprised of a series of acts, some of which occurred in one county and some in another, there could be no prosecution in either, unless so much was done in the one as would constitute a complete offense. *De Gaffenried v. State*, 28 Ala.App. 291, 182 So. 482 (1938); *Addington v. State*, 199 Kan. 554, 431 P.2d 532 (1967).

In order to determine the venue issue we must answer two questions: (1) What kind of "acts" are necessary under A.R.S. Sec. 13–1504(B) to authorize jurisdiction in Pima County? and (2) do the "acts" which occurred in Pima County satisfy the definition we have arrived at in answering the first question?

What is meant then by "acts requisite to the commission of an offense?" Does it mean "but for" the act which occurred the other acts or offense would not have occurred? Under this definition, but for the meeting in Pima County, the events in Pinal County would not have taken place. We do not believe that such definition would pass constitutional muster,[1] and Kansas has so held in *Addington v. State*, supra. Not only would it not pass constitutional muster, but adoption of such a

definition could have some rather absurd results. For example, A, while in Pima County, decides to go to Phoenix. He gets in his car and drives to Maricopa County, passing through Pinal County on the way. He arrives in Maricopa County and the next day he strangles B. Before he could arrive in Maricopa County it was necessary for him to get in his car in Pima County and drive through Pinal County. Under the "but for" rule, A could be tried for murder in Pima County or Pinal County in addition to Maricopa County. Such a result is contrary to our Constitution since we would be construing it to authorize a prosecution for a crime where the acts and intentions of the defendant in Pima and Pinal counties were without criminality. *Rogers v. State*, 14 Okl.Cr. 235, 170 P. 269 (1918).

We therefore hold that under A.R.S. Sec. 13–1504(B) the act must be one essential to the commission of the crime charged as such crime is defined by statute. In other words, the act must be part of the corpus delicti of the crime if it is to have any jurisdictional significance. *Addington v. State*, supra; *People v. Fair*, 60 Misc.2d 305, 302 N.Y.S.2d 654 (1969); *Rogers v. State*, supra; *State v. Graham*, 23 Utah 278, 64 P. 557 (1901).

An "attempt" is defined in A.R.S. Sec. 13–108:

"An attempt to commit a crime is the performance of an act immediately and directly tending to the commission of the crime with the intent to commit such crime, the consummation of which fails on account of some intervening cause."

The state contends that since appellant had the requisite intent in Pima County, the venue requirements are satisfied. We do not agree.

A.R.S. Sec. 13–131 states, in part, "In every crime . . . there must exist a union or joint operation of act and intent,

---

1. California appears to follow a "but for" rule. See *People v. Abbott*, 47 Cal.2d 362, 303 P.2d 730 (1956). However, California does *not* have a constitutional provision on venue as does Arizona.

. . . ." The forming of an intent is not an "act". An "act" is something done voluntarily, or in appropriate circumstances the failure to do something, but it does not refer to a state of mind. Intent is not an act. The "act" required is the one which must accompany the intent as is stated in A.R.S. Sec. 13–131.

■ Our next question is whether part of the corpus delicti of attempted murder took place in Pima County. Was there an act in Pima County immediately and directly tending to the commission of the crime? Put another way, did an overt act occur in Pima County? To answer this question we must first define "overt act". When, by reason of the conduct of the defendant, the situation becomes unequivocal and it appears the design will be carried into effect if not interrupted, the overt act requirement is satisfied. *State v. Mandel*, 78 Ariz. 226, 278 P.2d 413 (1954). The act need not be the last act, but there must be more than mere solicitation. *State v. Mandel*, supra.

■ Viewing the events which occurred in Tucson, we are constrained to conclude that no overt act occurred in Pima County. It was not until the money was paid in Pinal County that the situation became unequivocal and it appeared that the design would be carried into effect if not interrupted. No act which composed the corpus delicti of the crime[2] occurred in Pima County and therefore the court had no jurisdiction.

We note that when the crime charged is complete in one county, the purpose for which A.R.S. Sec. 13–1504(B) was enacted is not served by attempting to "bootstrap" jurisdiction in a county where a single act incident to the commission of the crime, but not a part of the corpus delicti has oc-

curred. See *Reynolds v. State*, 18 Ariz. 388, 391, 161 P. 884 (1916), holding that the crime of transporting liquor into the state was a continuing offense which could be tried in any county through which the liquor was transported, but noting that if such a crime was not a continuing one but was complete in the border county, that county alone would have jurisdiction to try the offense.

Since the superior court was without jurisdiction to try the case, and since A. R.S. Sec. 21–407(A) provides,

> "The grand jurors shall inquire into every offense *which may be tried within the county* which is presented to them by the county attorney . . . ." (Emphasis added)

it follows that the grand jury was likewise without jurisdiction to inquire into this case.

In view of our disposition of this case, it is unnecessary to reach the other issues raised by appellant. In order to expedite a new trial, should an indictment be sought in the appropriate county, however, we deem it advisable to comment on two of those issues.

■ First, appellant's contention that the evidence obtained via the recording of the telephone calls and the presence of a sending device on the person of the police officer should be suppressed is totally without merit. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Second, appellant's contention that he cannot be charged with attempted second degree murder is also without merit. Homicide is the unlawful killing of a human being with malice aforethought. A. R.S. Sec. 13–451. Certain circumstances of the commission of a homicide constitute

---

2. We reject any suggestion that a criminal conspiracy occurred in Pima County which would satisfy the "act" requirement of A.R.S. Sec. 13–1504(B) because one of the parties to the discussions was without criminal intent. *State v. Horton*, 275 N.C. 651, 170 S.E. 2d 466 (1969), cert. denied, 398 U.S. 959, 90 S.Ct. 2175, 26 L.Ed.2d 545 (1970).

murder in the first degree; the absence of those circumstances reduces the murder to second degree. A.R.S. Sec. 13–452. When the facts of a case support the charge of either first or second degree murder, which degree shall be charged is a matter of prosecutorial discretion. Likewise, the decision whether to charge attempt to commit first or second degree murder is also a matter of prosecutorial discretion. Had the substantive offense been charged rather than the attempt, appellant would not be heard to complain that an indictment for second rather than first degree murder was sought. *State v. Faught*, 97 Ariz. 165, 398 P.2d 550 (1965).

Appellant contends nevertheless that he could benefit from a charge of attempted first degree murder since the punishment would be less than that which follows a conviction for attempted second degree murder. The Arizona Supreme Court held in *State v. Mandel*, 78 Ariz. 226, 278 P.2d 413 (1954) that the inability to assign a punishment for a conviction of attempted first degree murder made the crime essentially a nullity. Appellant would have us re-examine *Mandel* on the ground that attempted first degree murder is punishable under the crimes not otherwise punished section, A.R.S. Sec. 13–1654. We do not agree. The legislature rightfully intended that first degree murder should be punished more severely than second degree murder. The fact that a punishment is indeterminable when an attempt to commit first degree murder has occurred, does not make it a less serious offense. It merely means that attempted second degree murder is all that can be charged. This fact benefits appellant, and he will not be heard to complain. *State v. Faught*, supra.

The judgment is reversed and the cause remanded with directions to dismiss the indictment.

KRUCKER and HATHAWAY, JJ., concur.