338 So.2d 1088 (1976)
Dwyne CRITTENDON, Appellant,
v.
STATE of Florida, Appellee.
No. Y-274.
District Court of Appeal of Florida, First District.
October 11, 1976.
Rehearing Denied November 23, 1976.
*1089 Ernest D. Jackson, Sr. of Jackson & Micks, Jacksonville, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace Allbritton, Asst. Atty. Gen., for appellee.
SMITH, Judge.
The Duval County circuit court convicted Crittendon of murder in the second degree and sentenced him to 199 years' imprisonment for his part in the brutal murder of Stephen Anthony Orlando. The only substantial point raised on Crittendon's appeal is that venue was improperly laid in Duval County.
On June 16, 1974, Crittendon and three confederates, all black males, armed themselves and set out in an automobile to "catch a white devil and kill him." In Duval County one of the group wrote a note, declaring vengeance on society by "the Black Revolutionary Army," which they agreed would be secured to the victim's body by the stab of a knife. After a predatory search in Duval County they picked up the hitchhiking victim at Jacksonville Beach in Duval County. They then drove just over the boundary of St. Johns County and, in a deserted area, shot Orlando dead with a pistol. They left the note as planned and returned to Duval County, where they threatened whites in the community in tape-recorded messages.
The Duval County grand jury indicted Crittendon and the others for murder in the first degree, committed by killing the victim from a premeditated design to effect his death "in the County of Duval and the County of St. Johns, State of Florida." The indictment was not attacked for any asserted irregularity in its allegation of venue.[1] There was no motion for change of venue.
The Constitution of the society which Crittendon so grievously insulted assures the accused in a criminal case "a speedy and public trial by impartial jury in the county where the crime was committed." Art. I, § 16, Florida Constitution. Except in circumstances not here pertinent, the Duval County grand jury had power to indict only for an offense "triable within the county." Secs. 905.16, .21, F.S. 1975. The grand jury charged unambiguously that Crittendon's offense was committed in the counties of Duval and St. Johns, and did not invoke its power to indict for a murder committed in a county unknown, but either in Duval or St. Johns:
"If the county [where the crime was committed] is not known, the indictment or information may charge venue in two or more counties conjunctively and proof that the crime was committed in that area shall be sufficient; but before pleading the accused may elect in which of those counties he will be tried." Art. I, § 16, Fla. Const.; § 910.03, F.S. 1975.
The State, pointing to evidence that the murder party assembled, prepared themselves and picked up their victim in Duval County, claims the benefit of § 910.05, F.S. 1975, which provides:

*1090 "If the acts constituting one offense are committed in two or more counties, the offender may be tried in any county in which any of the acts occurred."
Were any of the "acts constituting" this murder committed in Duval County? The meaning of § 910.05's critical phrase is illumined by its provisions before 1970, when legislation changed only its "style of expression."[2] We are entitled to the benefit of that illumination in interpreting the present law. State ex rel. Szabo Food Services, Inc. v. Dickinson, 286 So.2d 529, 531 (Fla. 1974); Tampa & J. Ry. Co. v. Catts, 79 Fla. 235, 243, 85 So. 364, 366 (1920). Section 910.05, F.S. 1969, provided:
"Where several acts are requisite to the commission of an offense, the trial may be in any county in which any of such acts occurs."
The legislature regarded "acts constituting" an offense as substantially equivalent to "acts ... requisite to the commission of an offense"; so, therefore, do we.
There are no Florida decisions answering the central question in this case. In considering judicial interpretations of similar venue statutes in other states, we must distinguish those of California and other states where statutes permit prosecution anywhere "the acts or effects thereof constituting or requisite to the consummation of the offense occur... ." E.g., People v. Powell, 67 Cal.2d 32, 59 Cal. Rptr. 817, 835, 429 P.2d 137, 155 (1967) (emphasis added); State v. Parker, 235 Or. 366, 384 P.2d 986 (1963); People v. Tullo, 41 A.D.2d 957, 343 N.Y.S.2d 984 (1973), aff'd 34 N.Y.2d 712, 356 N.Y.S.2d 861, 313 N.E.2d 340 (1974); People v. Thorn, 21 Misc.Rep. 130, 47 N.Y.S. 46 (Gen.Sess. N.Y.Co. 1897); Annot., 30 A.L.R.2d 1265, 1285 (1953). The Kansas Supreme Court, in State v. Pyle, 216 Kan. 423, 434-35, 532 P.2d 1309, 1318 (1975), regarded a Kansas statute like Florida's pre-1970 § 910.05 as sufficiently "similar" to California's to be given identical effect.[3] We disagree. Many acts of preparation may be requisite to "consummation" of a particular homicide, but preparation is not one of the elemental acts "constituting" or "requisite to the commission" of premeditated first degree murder.
Venue statutes are typically construed coextensively with the law of criminal attempts: if the criminal object was so far effectuated by acts in the county of the forum that a prosecution for the attempted offense could there be laid, had the offense failed of completion, the same acts may be regarded as among those "constituting" or "requisite to the commission" of the offense culminated in another county. Thus, the Ohio Court of Appeals held in State v. Domer, 1 Ohio App.2d 155, 159-60, 204 N.E.2d 69, 74 (1965):
"The act performed purposely to kill another must [in order to fix venue where the antecedent act occurred] proceed to a point beyond mere preparation where it can be said that the act committed tends directly toward accomplishing such specific criminal purpose. There must be the performance of an act in furtherance of or carrying out at least, in part, one of the necessary physical elements by which the murder is to be accomplished and of such a character that unless interrupted by an unknown intermediate and independent force, the crime will be consummated."
To determine proper venue in Domer, the Ohio court invoked the rule of a New York decision acquitting of attempted robbery defendants who "were driving around, looking for the payroll employee ..., intending to rob him." 1 Ohio App.2d at 160, 204 N.E.2d at 74. The Ohio court held, concerning a venue statute similar to Florida's § 910.09, F.S. 1975 (supra, n. 1):

*1091 "Driving around, intending to kill a passenger in the automobile driven by the defendant, looking for a place to commit the act or going to a predetermined place to commit the proposed unlawful act, at most, is preparation which could not be punished in the trial of one charged with murder in the first degree committed after arrival at the place ultimately or previously determined." 1 Ohio App.2d at 160, 204 N.E.2d at 74.
The Arizona Court of Appeals, in State v. Cox, 25 Ariz. App. 328, 543 P.2d 449 (1976), construed an Arizona venue statute which, like § 910.05, F.S. 1969, permitted prosecution wherever any act "requisite to the commission of an offense" was committed. That court refused to adopt the relaxed venue criterion prevailing in California, doubting that it would "pass constitutional muster" in Arizona;[4] and held, consistently with Arizona law of criminal attempts, that there must have been an act in the county of the forum from which "the situation becomes unequivocal and it appears the design will be carried into effect if not interrupted... ." Cox, 543 P.2d at 453. By that standard the court held that venue could not be laid for attempted murder in Pima county, where "[n]o act which composed the corpus delicti of the crime occurred":
"It was not until the money was paid [to an ostensible hired killer] in Pinal County that the situation became unequivocal and it appeared that the design would be carried into effect if not interrupted." 543 P.2d at 453.
In the peculiar circumstances of this case, the acts committed by Crittendon and his cohorts in Duval County would have been sufficient to constitute an attempt to murder Stephen Anthony Orlando had Orlando been prescient enough to step out of the car before it entered St. Johns County en route to the place of execution. In Duval County the four assassins gathered, conceived their plan, put on appropriate clothing, obtained weapons, prepared the death note, selected the victim, took him into the car and drove the car purposefully toward its destination. The murder strategy was fully, elaborately and, the jury could have found, irrevocably set in motion. Momentum, absent in Domer, was here enforced by the combination of four separate wills.[5] As the car approached the county line, Crittendon and the others were attempting to commit murder. The time of preparation had passed and the acts of the four had "reach[ed] far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Groneau v. State, 201 So.2d 599, 603 (Fla.App. 4th, 1967), aff'd 207 So.2d 452 (Fla. 1967); 1 Wharton's Criminal Law and Procedure § 74 (Anderson ed. 1957); Annot., 54 A.L.R.3d 612 (1973). For those reasons, Crittendon's offense was committed, as the indictment charged, in both Duval and St. Johns. Venue was properly laid in Duval. Sec. 910.05, F.S. 1975.
There is another reason why Crittendon was properly charged and tried in Duval County. Crittendon's conviction does not rest on proof that he himself shot the fatal bullet into Orlando's head. Crittendon was an aider of the other three, including the one who fired the shot. As an aider Crittendon was properly charged and convicted as a principal in the first degree, § 777.011, F.S. 1975, and he was properly charged and tried in Duval County, where much of his aid was given. Sec. 910.04, F.S. 1975:
"If a person in one county aids, abets, or procures the commission of an offense in *1092 another county, he may be tried in either county."
AFFIRMED.
MILLS, Acting C.J., and MELVIN, WOODROW, Associate Judge, concur.
NOTES
[1] Crittendon's argument that venue could properly be laid only in the county where the victim was shot and where he died is not compromised by his failure before trial to attack the indictment as containing venue allegations insufficient as a matter of law. He was not obliged to anticipate proof that Orlando was shot and killed in the same place, St. Johns County. Consistent with Crittendon's position, the indictment might properly have been regarded as intending to invoke § 910.09, F.S. 1975:

"If the cause of death is inflicted in one county and death occurs in another county, the offender may be tried in either county."
[2] Ch. 70-339, § 77, Fla.Laws.
[3] "[I]f Goldie was removed from her home [in Kiowa County] and killed in another county, the removal was an act `requisite' to the commission of the murder; venue would still be proper in Kiowa county." Pyle, 216 Kan. at 435, 532 P.2d at 1318. This decision is perhaps explicable by the fact that the victim's body was never found and the place of her death and of the force causing it could not be proved.
[4] Arizona's constitution, like Florida's but unlike California's, assures the accused of a trial by a jury "of the county in which the offense is alleged to have been committed ... ." Art. 2, § 24, Ariz.Const., quoted in Cox, 543 P.2d at 451.
[5] "A conspirator who has committed himself to support his associates may be less likely to violate this commitment than he would be to revise a purely private decision. Moreover, the encouragement and moral support of the group strengthens the perseverance of each member." Developments in The Law  Criminal Conspiracy, 72 Harv.L.Rev. 920, 924 (1959).