PEOPLE v LEE

Docket No. 68358. Submitted July 14, 1983, at Detroit.—Decided
April 30, 1984.

Defendant, Edith J. Lee, was tried in the Wayne Circuit Court as
a result of allegations of Medicaid fraud. The trial resulted in a
mistrial due to a hung jury. A retrial was then scheduled in
the Wayne Circuit Court on one count of obtaining money by
false pretenses over $100 and one count of submitting false
claims to the Medicaid program. Defendant filed a motion to
dismiss or in the alternative for a bill of particulars and for an
order requiring the indorsement of all res gestae witnesses. The
trial court, Arthur M. Borman, J., denied the motions to
dismiss and for a bill of particulars but granted the motion
requiring the indorsement of res gestae witnesses. An order
was thereafter entered adjourning the trial and staying pro-
ceedings pending the Court of Appeals determination of the
people's application for leave to appeal from the trial court's
pretrial order. The Court of Appeals thereafter granted the
people's application for leave to appeal and entered an order to
that effect. *Held:*

1. A defendant's rights are sufficiently protected by sources
outside the res gestae rule. The rule can result in the delay or
dismissal of cases even when the constitutional standards are
met. The Court of Appeals, nevertheless, noted that it is

REFERENCES FOR POINTS IN HEADNOTES

[1, 4-6] 29 Am Jur 2d, Evidence §§ 180, 181.
    81 Am Jur 2d, Witnesses § 2.
[2] 79 Am Jur 2d, Welfare Laws §§ 38, 113.
    Criminal liability under state laws in connection with application
    for, or receipt of, public welfare benefits. 22 ALR4th 534.
[3] 32 Am Jur 2d, False Pretenses §§ 33, 72.
[5, 6] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[6] 29 Am Jur 2d, Evidence § 326.
    Admissibility, at trial of criminal case, of evidence of defendant's
    criminal acts other than those charged—Supreme Court cases. 93
    L Ed 184.
    Admissibility, under Rule 404(b) of Federal Rules of Evidence, of
    evidence of other crimes, wrongs, or acts similar to offense
    charged to show preparation or plan. 47 ALR Fed 781.

powerless to change the res gestae rule; nevertheless the Court urged its abolition.

2. The doctor's patients are not witnesses to the doctor's procedure of billing the Medicaid program. They have no ability to witness those elements of the offenses relating to the billing process and thus are not res gestae witnesses in regard to those elements. Thus, they do not have to be called to prove that Dr. Lee made, presented, or caused to be made or presented to an employee or officer of the state a claim under the Social Welfare Act.

3. The patients are not witnesses to the reimbursement procedure, and therefore are not res gestae witnesses to the third element of the false pretenses count, the accomplishment of the alleged fraud.

4. Unless the manifestation of the defendant's intent depends on the patients, they are not res gestae witnesses to the knowledge or intent elements.

5. The patients are res gestae witnesses in regard to the elements relating to the falsity of the claims made.

6. The prosecutor cannot rely solely on computer compilations of data or statistical samplings to show the improbability of treatment. No amount of circumstantial evidence or well-based inferences can change the mandate that eyewitnesses be indorsed as res gestae witnesses.

7. The information alleged one common plan or scheme to defraud, therefore, the number of res gestae witnesses who must be indorsed is the number required to prove a common plan and scheme. The prosecutor must show at least two offenses linked by a common plan or scheme. The quantum of proof is left to the judgment of the prosecutor, who is charged with persuading the trier of fact of the existence of a scheme beyond a reasonable doubt. Beyond the proof of the barest plan or scheme, the prosecutor is not required to present additional witnesses whose testimony would be cumulative. However, the Court of Appeals decision does not bar testimony of additional fraudulent billings.

8. The circuit court correctly decided that res gestae witnesses must be indorsed. There is no inherent exception to the res gestae rule when a prosecutor can prove his case with circumstantial evidence.

1. CRIMINAL LAW — WITNESSES — RES GESTAE RULE.

The purpose of the res gestae rule is to protect a defendant from the suppression of favorable testimony or from selective investigation by the state; under the rule, the prosecution has a duty

to show the whole transaction as it was regardless of whether it tends to establish guilt or innocence (MCL 767.40; MSA 28.980).

2. FRAUD — MEDICAID FRAUD — CRIMINAL LAW.

The elements of the crime of Medicaid fraud are made out when a person makes, presents, or causes to be made or presented to an employee or officer of the state a claim under the Social Welfare Act knowing the claim to be false, fictitious, or fraudulent (1939 PA 280; MSA 400.607; MSA 16.614[7]).

3. FALSE PRETENSES — CRIMINAL LAW.

The elements of the crime of false pretenses with intent to defraud are made out when it is shown that a person makes a false pretense with intent to defraud and the fraud is accomplished (MCL 750.218; MSA 28.415).

4. WITNESSES — RES GESTAE WITNESSES — CRIMINAL LAW.

A person who is not in a position to observe the alleged crime, *i.e.,* because of remoteness, is not a res gestae witness; however, the res gestae rule includes those who would testify that they saw nothing.

5. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — EYEWITNESSES TO CRIME.

A prosecutor is required to endorse eyewitnesses to a crime as res gestae witnesses; no amount of circumstantial evidence or well-based inferences can change that mandate (MCL 767.40; MSA 28.980).

6. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — NUMBER OF WITNESSES TO BE INDORSED.

The number of res gestae witnesses who must be indorsed by the prosecutor is the number required to prove a common plan or scheme where the prosecutor did not charge the defendant with a definite number of criminal acts, but instead, alleged one common plan and scheme to defraud the Michigan Medical Assistance Program by submitting claims for home visit services not rendered or for a higher fee than' that to which the defendant was entitled; the prosecutor must show at least two offenses linked by a common plan or scheme and is not required by the res gestae rule to present additional cumulative witnesses once the scheme stands proven (MCL 767.40; MSA 28.980).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Edwin M. Bladen*

and *Chester S. Sugierski, Jr.,* Assistants Attorney General, for the people.

*Ivan E. Barris* and *Janet G. Callahan,* for defendant on appeal.

Before: J. H. GILLIS, P.J., and GRIBBS and H. R. GAGE,* JJ.

GRIBBS, J. This case involves allegations of Medicaid fraud. The defendant, Edith J. Lee, is awaiting retrial on one count of obtaining money by false pretenses over $100[1] and one count of submitting false claims to the Medicaid program.[2] Her first trial resulted in a mistrial due to a hung jury.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] "Any person who, with intent to defraud or cheat, shall designedly, by color of any false token or writing or by any false or bogus check or other written, printed or engraved instrument, by spurious coin or metal in the similitude of coin, or by any other false pretense, cause any person to grant, convey, assign, demise, lease or mortgage any land or interest in land, or obtain the signature of any person to any written instrument, the making whereof would be punishable as forgery, or obtain from any person any money or personal property or the use of any instrument, facility or article or other valuable thing or service, or by means of any false weights or measures obtain a larger amount or quantity of property than was bargained for, or by means of any false weights or measures sell or dispose of a less amount or quantity of property than was bargained for, if such land or interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of, shall be of the value of $100.00 or less, shall be guilty of a misdemeanor; and if such land, interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00." MCL 750.218; MSA 28.415.

[2] "(1) A person shall not make or present or cause to be made or presented to an employee or officer of the state a claim under Act No. 280 of the Public Acts of 1939, as amended, upon or against the state, knowing the claim to be false, fictitious, or fraudulent.

"(2) A person who violates this section is guilty of a felony, punishable by imprisonment for not more than 4 years, or by a fine of not more than $50,000.00, or both." MCL 400.607; MSA 16.614(7).

In this interlocutory appeal the prosecutor challenges a pretrial order to indorse res gestae witnesses.

## I. The Information

The information was divided into two counts. Both counts alleged that the defendant acted with one common plan and scheme to defraud the Michigan Medical Assistance Program by submitting claims for home visit services not rendered or for a higher fee than that to which she was entitled.

The second count covered the treatment period of July 28, 1977, through January of 1978.[3] It was brought under the Medicaid False Claim Act, MCL 400.601 *et seq.;* MSA 16.614(1) *et seq.* That statute took immediate effect on July 27, 1977. Count I covered the pre-statutory period of January 1, 1976, through July 27, 1977, and was brought under the general "false pretenses" statute.[4]

---

[3] Count II reads:

"Edith J. Lee, in the County of Wayne, State of Michigan, acting with one common plan and scheme to defraud the Michigan Medical Assistance Program, hereinafter referred to as the Medicaid program, did submit Medicaid practitioner Invoices to employees of the Michigan Department of Social Services, wherein Edith J. Lee requested payment from the Medicaid program, that such practitioner invoices were submitted during the time period of July 28, 1977, through January of 1979, that such practitioner invoices represented billings for medical services consisting of individual home visits which Edith J. Lee claims to have rendered to Medicaid patients between July 28, 1977, through January of 1978; whereas in truth and in fact the said Edith J. Lee knew that many of the practitioner invoices submitted by her were utterly false and that she had never rendered the billed-for services, or that she knowingly used billing code numbers which falsely represented the services actually rendered; and said Edith J. Lee did thereby cause false and fictitious claims under Act No. 280 of the Public Acts of 1939, as amended, upon or against the State of Michigan, to be made and presented to employees of the State of Michigan, knowing said claims to be false and fictitious, in violation of MCL 400.607; MSA 16.614(7), and against the peace and dignity of the People of the State of Michigan."

[4] Count I reads:

## II. The Prosecutor's Theory

The Medicaid program provides for reimbursement to doctors for treating patients in "home visits". The fee for the first patient seen in the home varied between $8.90 and $12 during the period involved. (For simplicity, we will use an average estimate of $10 in our discussion.) Additional patients seen during the same visit entitled the doctor to $2 each. To assist in computer tabulations, code numbers are used in the claim for reimbursement. Different numbers are used to differentiate the first patient from subsequent patients.

The defendant allegedly treated several members of a family on the same day but submitted separate invoices for each patient seen on that day. Each invoice used code numbers indicating first patient status as opposed to first patient and subsequent patient status. Thus, Dr. Lee would receive reimbursement of $50 for seeing a family of five (five at $10 each) instead of the allowable

"Edith J. Lee, in the County of Wayne, State of Michigan, acting with one common plan and scheme to defraud the Michigan Medical Assistance Program, hereinafter referred to as the Medicaid program, did submit Medicaid practitioner invoices to the Michigan Department of Social Services which administers the Medicaid program, that such practitioner invoices were submitted during the time period of January, 1976, through July, 1978, that such practitioner invoices represented billings for medical services consisting of individual home visits which Edith J. Lee claims to have rendered to Medicaid patients between January 1, 1976, and July 27, 1977, that in reliance upon such practitioner invoices the Michigan Department of Social Services paid one Edith J. Lee for such claimed services; whereas the said Edith J. Lee knew that many of the practitioner invoices submitted by her were utterly false and that she had never rendered the billed-for services, or that she knowingly used billing code numbers which falsely represented the services actually rendered, and that as a result of these false practitioner invoices intentionally submitted by Edith J. Lee she fraudulently obtained in excess of $100.00 from the Michigan Department of Social Services, in violation of MCL 750.218; MSA 28.415, and against the peace and dignity of the People of the State of Michigan."

$18 (the first patient at $10, all remaining patients at $2 each).

Dr. Lee allegedly submitted the invoices for treatments in the same family one at a time over an average of 11 months so that the Medicaid program could not detect that she had used the first patient diagnosis code for each of these patients seen during the same visit. Assuming that the defendant in fact treated each person for which a claim was submitted, the prosecutor estimated that approximately $500,000 of the sum paid to Dr. Lee by Medicaid was fraudulently obtained.

In the first trial the prosecutor relied on circumstantial evidence to show that Dr. Lee did not treat all the patients for which claims were submitted. The defendant's patient records contained only 25% to 30% of the names for which she billed Medicaid. The defendant explained that each name in the record meant that the entire family was treated during the home visit.[5] The prosecutor matched the defendant's records with the invoices she submitted to the Medicaid program, comparing the number of "family" names with the number of invoices submitted for that day. For example, the defendant's record for December 20, 1976, indicated 16 "families" were treated, for which Dr. Lee submitted 322 invoices for payment. The prosecutor also tabulated the top 125 billing days during this period and the number of minutes required to treat the number of patients claimed on the defendant's invoices. On December 20, 1976, if the defendant worked an 8-hour or 12-hour day,

[5] We refer to the defenses presented at trial only because they indicate the direction the prosecution may take, in anticipation, upon retrial. This, in turn, affects the requirement of res gestae witnesses. A different attorney represented the defendant at the first trial; it is possible the defense strategy will change on retrial.

she would have spent 2.01 or 3.02 minutes respectively on each patient. From these statistics, the prosecutor sought to create the inference that the defendant could not have treated all the patients for which she billed Medicaid. These statistics were tabulated from the invoices submitted for the two years and involved approximately 5,000 Medicaid patients and over 96,000 home visits.

For 1976 and 1977, only 13 invoices were found which did not involve home visits. No home visit invoices used the code number for subsequent patients.

### III. THE MOTION TO INDORSE

While awaiting retrial, defendant moved to dismiss or, in the alternative, for a bill of particulars and for an order requiring the prosecutor to indorse all res gestae witnesses. Wayne County Circuit Court Judge Arthur M. Bowman denied the motion to dismiss and for a bill of particulars, but granted the motion to indorse. The court did not require that all 5,000 patients be indorsed. It required only that res gestae witnesses—of an undetermined number—be indorsed. The court encouraged the parties to agree to the number of witnesses. Apparently the parties were unable to compromise, and this appeal resulted.

### IV. THE RES GESTAE RULE

The res gestae rule has its genesis in MCL 767.40; MSA 28.980:

"All informations shall be filed in the court having jurisdiction of the offense specified therein, after the proper return is filed by the examining magistrate, by the prosecuting attorney of the county as informant; *he*

*shall indorse thereon the names of the witnesses known to him at the time of filing the same.* The information shall be subscribed by the prosecuting attorney or in his name by an assistant prosecuting attorney. Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine." (Emphasis added.)

From this statute the Michigan courts have found a "duty of the prosecution to show the whole transaction as it was, regardless of whether it tends to establish guilt or innocence". *People v Tann,* 326 Mich 361, 367; 40 NW2d 184 (1949). The purpose of the rule is to protect a defendant from the suppression of favorable testimony or from selective investigation by the state. *People v Raider,* 256 Mich 131, 135; 239 NW 387 (1931); *Maher v People,* 10 Mich 212, 225 (1862).

Only in Michigan has this rule found continued firm support. See 7 Wigmore, Evidence (Chadbourn rev, 1978), § 2079, pp 538-539. The rule has been criticized by commentators, courts, and counselors. For example, Professor Chadbourn, in his revision of Wigmore's treatise on evidence, calls the rule "a doctrine of so little worth". *Id.,* p 543.

There has been at least one legislative attempt to abolish the rule. See HB 4394 (introduced 4/14/83). As discussed in the Criminal Defense Newsletter, "[p]roponents of the bill argue that Michigan's res gestae witness rule is an anachronism unmatched in any other state's rules of criminal procedure". *Res Gestae Witness Bill Sparks Debate,* Criminal Defense Newsletter, vol 6, No 8, p 6 (July, 1983).

As stated by this panel in *People v Cortez,* 131 Mich App 316, 324; 346 NW2d 540 (1984), "the rule serves no useful purpose, because defendants may obtain the testimony of favorable witnesses

through compulsory process without the assistance of the prosecution. See US Const, Am VI; Const 1963, art 1, § 20; MCL 767.32; MSA 28.972, and MCL 767.33; MSA 28.973. In addition, the prosecutor has an ethical duty to disclose evidence favorable to the defense:

"A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment." DR 7-103(B).[6]

From all this, we conclude that a defendant's rights are sufficiently protected by sources outside the res gestae rule. The rule can result in delay or dismissal of cases even when the constitutional standards are met. This Court is powerless to change the res gestae rule; nevertheless we urge its abolition.

## V. PATIENTS AS RES GESTAE WITNESSES

### A. *Elements of the Charged Offenses*

Whether Dr. Lee's patients are res gestae witnesses—that is, witnesses to the alleged criminal transaction—turns on the elements of the crimes charged. The elements of Medicaid fraud are: (1) a person makes, presents, or causes to be made or presented, (2) to an employee or officer of the state, (3) a claim under the Social Welfare Act, 1939 PA 280, (4) knowing the claim to be false, fictitious, or

[6] See also DR 1-102. We concede that a disciplinary rule does not have the equivalent authority of a statute in regulating conduct. However, we do not take the prosecutor's ethical duty lightly, and we expect that trial courts will be diligent in assuring that defendants receive the intended benefits of DR 7-103(B).

fraudulent. MCL 400.607; MSA 16.614(7); *In re Wayne County Prosecutor,* 121 Mich App 798, 801-802; 329 NW2d 510 (1982); *People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135, 144; 324 NW2d 782 (1982). "False pretenses" is shown when (1) a person makes a false pretense, (2) with intent to defraud, and (3) the fraud is accomplished. MCL 750.218; MSA 28.415; *People v Lee,* 259 Mich 355, 356; 243 NW 227 (1932); *People v Taurianen,* 102 Mich App 17, 27; 300 NW2d 720 (1980).

### B. *The Patients*

We now apply the elements of the offenses to the circumstances of Dr. Lee's patients. The patients are not witnesses to the doctor's procedure of billing the Medicaid program. They have no ability to witness those elements of the offenses relating to the billing *process* and thus are not res gestae witnesses. *Cf. People v Anderson,* 64 Mich App 218, 223; 235 NW2d 746 (1975) (person who is not in a position to observe the alleged crime, *e.g.,* because of remoteness, is not a res gestae witness). Therefore, the patients do not have to be called to prove that Dr. Lee made, presented, or caused to be made or presented to an employee or officer of the state a claim under the Social Welfare Act.[7]

The prosecutor concedes that the state is not concerned about which family member was in fact treated first and which members were subsequently seen. The state's concern is that more than one patient per household was billed at the "first patient" rate. For this reason, the use of the first patient code numbers is purely a billing pro-

---

[7] These are the three factors of the first element of the Medicaid statute count and part of the first element ("makes") of false pretenses.

cedure, excusing the production of patients as witnesses. If, for some reason, the prosecutor had intended to prove that Patient A was treated second, not first as billed, Patient A would be a necessary witness to the fact of treatment and sequence. The statutes and the information do not require such a detailed showing, however, so this element of proof does not require indorsement of the patient as a res gestae witness.

The patients are not witnesses to the reimbursement procedure and therefore are not res gestae witnesses to the third element of the "false pretenses" count, the accomplishment of the alleged fraud.

At this juncture, the prosecutor does not seek to show Dr. Lee's intent through statements to her patients. Unless the manifestation of her intent depends on the patients, they are not res gestae witnesses to the knowledge or intent elements.[8]

The elements remaining, then, are related to the falsity of the claims made: "false, fictitious, or fraudulent" for Medicaid fraud and *"false* pretense" made to defraud under the false pretenses statute. For these proofs, we conclude that the patients are res gestae witnesses. If the prosecutor seeks to prove that a billed-for patient was not treated, the patient is a witness. If the prosecutor charges that Medicaid was billed for nonexistent persons, there can be no witness to the fact of "non-treatment". Proof of the nonexistence of a person would rely on the Medicaid program's listing of approved recipients. But to prove "non-treatment" of an existing person, that person is a res gestae witness. The res gestae rule includes those who would testify that they saw nothing.

---

[8] Knowledge is part of the fourth element of Medicaid fraud; intent to defraud is the second element of false pretenses.

*People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976).[9]

The prosecutor cannot rely solely on computer compilations of data or statistical samplings to show the improbability of treatment. Patients exist, even if they are duplicative of the hard data presented. No amount of circumstantial evidence or well-based inferences can change the mandate that eyewitnesses be indorsed as res gestae witnesses.[10]

We note that in *People v American Medical Centers, supra,* p 149, the prosecutor used the testimony of patients to show that a particular medical procedure, billed to the Medicaid program, had not been performed.

### C. *Number of Witnesses*

Next, we consider the number of witnesses who must be indorsed. The prosecutor did not charge a definite number of criminal acts. Instead, the information alleges "one common plan and scheme to defraud". Therefore, the number of res gestae witnesses is the number required to prove a "common plan and scheme". There is no legal yardstick by which to measure the number of such wit-

---

[9] Those patients who the prosecutor concedes were examined are not res gestae witnesses to their own treatment because they did not witness any element of the charged offense. Proper treatment of some patients is immaterial to the alleged fraud involving other patients. The defendant conceded this point at the motion hearing in circuit court. If they witnessed another patient's "treatment" for which the prosecution contends treatment was not provided, they are res gestae witnesses to the fact of treatment or non-treatment, as is the "non-treated" patient.

[10] We thus reject the prosecutor's claim that there is an inherent exception to Michigan's res gestae rule when proof can be had by alternative means. The prosecutor's reliance on federal cases is misplaced; they are not based on Michigan's unique law. Beyond the *exception* for cumulative testimony (treated *infra),* we find no wholesale *exemption* from the rule due to a potentially large witness pool.

nesses. It is largely a factual determination of how many fraudulent billings are needed to convince the trier of fact that the billings were not independent of each other, but comprised a larger scheme.

In other contexts, the proof of a "[c]ommon scheme or plan" has required the proof of, simply, more than one connected similar offense. *State v Wright,* 191 NW2d 638, 641 (Iowa, 1971) (proof of other acts in context of evidence rule similar to MRE 404[b]). In *State v Frederick,* 129 Ariz 269, 271; 630 P2d 565, 567 (Ariz App, 1981), two offenses were allowed to be joined in an indictment under a rule allowing joinder if the charges were part of a common scheme or plan. For purposes of determining the vagueness of a sentence enhancement statute, the Supreme Court of Nevada discussed two definitions:

"[T]he phrase 'common plan or scheme' has acquired a common law usage in one context that means a single plan or scheme contemplating two or more offenses before the plan has been completed, and that means in another context the perpetration of two independent and unrelated offenses having a sufficient number of elements in common to make the commission of the first relevant to a determination of the identity of the perpetrator of the second." *Washoe County Sheriff v Smith,* 91 Nev 729, 732; 542 P2d 440, 442 (1975).[11]

As a caveat, the Court of Appeals for the Second Circuit determined in a mail fraud case that "sporadic deceits in the course of a business will not constitute a 'scheme'; that there must be some continuity in the representations, so that they can be said to be part of the continuous means by which the business is carried on". *United States v Dilliard,* 101 F2d 829, 834 (CA 2, 1938), *cert den*

---

[11] The second context is the evidentiary context. See MRE 404(b).

306 US 635; 59 S Ct 484; 83 L Ed 1036 (1939), citing *McLendon v United States,* 2 F2d 660 (CA 6, 1924).

We recognize that the cited cases involve the sufficiency of evidence to convict or the propriety of evidentiary rulings, while our case involves the necessity of producing certain witnesses. Still, the cases offer guidance in our determination of what it takes to show a "common plan and scheme".[12] The prosecution is not required to prove 5,000 or even 50 fraudulent billings. The prosecutor must show at least two offenses linked by a common plan or scheme.

Beyond the proof of the barest plan or scheme, additional testimony would be cumulative.[13] Our decision does not bar testimony of additional fraudulent billings. The quantum of proof is left to the judgment of the prosecutor, who is charged with persuading the trier of fact of the existence of a scheme beyond a reasonable doubt. We say only that the prosecution is not *required* by the res gestae rule to present additional witnesses because the res gestae—the scheme—stands proven.[14]

---

[12] See fns 3 and 4 *supra.*

[13] *People v Raider, supra,* 256 Mich 134-135; *People v Sims,* 62 Mich App 550, 554-555; 233 NW2d 645 (1975).

[14] Additional offenses offered as further proof of the scheme may well require indorsement of additional res gestae witnesses.

The prosecutor expresses concern that the defendant will present some form of a "mistake" defense—that with 96,000 billings some mistakes are bound to occur. In this instance, the prosecutor would be entitled under MRE 404(b) to introduce evidence of other acts to show intent or abence of mistake. In essence, this would reveal the far-reaching scope of the scheme. The fact of a scheme already having been shown, the res gestae rule would pose no obstacle to the admission of the additional evidence.

Similarly, our decision does not prohibit the prosecution from offering its computer data. Requiring compliance with the res gestae rule in no way prevents the use of circumstantial evidence.

### CONCLUSION

The circuit court correctly decided that res gestae witnesses must be indorsed under MCL 767.40; MSA 28.980. There is no inherent exception to the res gestae rule when a prosecutor can prove his case with circumstantial evidence.

The trial court's remarks during the motion hearing, however, indicate that there was some question as to which patients, and how many, should be indorsed. We have offered some guidelines to assist the court. Accordingly, we affirm the court's order and remand for further proceedings consistent with this opinion.

Affirmed and remanded.