630 P.2d 565

**The STATE of Arizona, Appellee,**

v.

**Terry Eugene FREDERICK, Appellant.**

**No. 2 CA–CR 2200.**

Court of Appeals of Arizona,
Division 2.

May 4, 1981.

Rehearing Denied June 3, 1981.

Review Denied June 23, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

David P. Tiers, Tucson, for appellant.

## OPINION

HOWARD, Judge.

As the result of two separate incidents, a thirteen-count indictment was returned against appellant. Counts one through six involved the victim Aletha Mays. One count was for kidnapping and the other five counts were for sexual assault which occurred on December 8, 1979. The victims of the second sexual incident which occurred on December 14, 1979, were two women; thirteen and eighteen years of age.

The jury was unable to reach a verdict on counts one through six but did return guilty verdicts on the remaining counts which consisted of two counts of kidnapping and five counts of sexual assault. Appellant was sentenced to the presumptive term of 10.5 years on counts nine through thirteen, all convictions of sexual assault, to be served consecutively. He was sentenced to the presumptive term of 10.5 years on the kidnapping counts, to be served concurrently with the other sentences.

Pursuant to a subsequent plea bargain, appellant pled guilty to one of the counts involving Aletha Mays, and the other counts were dismissed.

Appellant's defense in the trial on counts one through six was consent. His defenses on the other counts were alibi and mistaken identity. On appeal he contends that the trial court erred in refusing to permit him to cross-examine Aletha Mays about a prior felony conviction and in refusing to give his instructions on intent.

■ Since the jury did not convict appellant on the counts involving Aletha Mays, he cannot claim error. Furthermore, the plea bargain and guilty plea has terminated that case. We will not consider any of these alleged errors since they are moot.

The following issues are left for review: (1) Did the trial court err in refusing appellant's motion to sever those counts involving Aletha Mays from the others? (2) Was testimony concerning a license plate search inadmissible hearsay? (3) Did the court err when it refused to allow appellant's former attorney to testify? (4) Did the court commit error by failing to state its reasons for the imposition of consecutive sentences?

■ We have set forth the law on severances in *State v. Perry*, 116 Ariz. 40, 567 P.2d 786 (App.1977). Offenses may be joined in an indictment if they are part of a common scheme or plan. A common scheme or plan is shown when similarities exist where one would normally expect to find differences. Where joinder is proper, the Fifth Amendment is not violated by the fact that a defendant must elect to testify as to both charges or to none at all. The incidents here show the following similarities: (1) On both occasions, the victims were picked up while hitchhiking; (2) all victims were picked up from the same area of the city; (3) all victims were picked up at approximately the same time in the early evening; (4) the two incidents occurred within ten days of each other; (5) the victims were kidnapped at gunpoint shortly after entering appellant's vehicle; (6) the victims were taken to deserted areas in the northwest corner of the Tucson metropolitan area; (7) appellant discussed marijuana with the first victim as well as with the other two victims; (8) all victims were led from the car by the hand; (9) the victims were forced to lie on either a bedspread or sleeping bag; (10) each victim was sexually abused in two distinct assaults; (11) all victims were forced to perform fellatio; (12) appellant did not completely disrobe and only lowered his pants; (13) each victim was driven back to an area near the original destination; and (14) each victim was threatened with death. The similarities here bring the case within the rule stated in *State v. Perry*, supra, and the trial court did not err in failing to grant a severance.

■ One of the victims of the second assault gave the police the license number which she had attempted to memorize of appellant's vehicle. Officer Garagin ran a check on this number, Arizona IFJ–031, and was unable to find a vehicle with the same number. He ran another check on TFJ–031 which was later identified as the license number of appellant's vehicle. The automobile which was located fit the description, both externally and internally, which the victims gave of appellant's car. On cross-examination, appellant brought out the fact that a record check was being conducted in the other 49 states on number TFJ–031. Officer Garagin testified on redirect that his check had shown that the series TFJ–031 was used in 23 states but not in the other 27. In addition to the State of Arizona, he found that the same plate number had been issued in Michigan but had been purged and was unavailable after November 1979. He also testified that he was checking the series IFJ–031 in the other states and that he would have the results after lunch.

After the lunch break Officer Garagin was permitted, over appellant's hearsay objection, to testify to the results of his check of the series IFJ–031 in the other 49 states. Appellant claims that the overruling of his objection constituted reversible error. We do not agree. Assuming, arguendo, that

the officer's testimony was hearsay, its admission was harmless since the existence or non-existence of a license number in one of the other states with the series IFJ–031 was not material in view of the fact that the victim had obviously mistaken the first letter of appellant's license plate as an I instead of a T.

Appellant next claims that he is entitled to reversal because the trial court refused to let his former attorney, John Messing, testify regarding a surreptitious show-up he arranged between appellant and the 18-year-old victim. In spite of the fact that a condition of appellant's release from custody was that he have no contact by telephone, in person or by mail, with any of the alleged victims, Mr. Messing located where the 18-year-old victim was working and arranged to have appellant go to the fast food restaurant where she worked and purchase food from her. Mr. Messing would have testified that when the victim waited on appellant, she showed no signs of recognition.

■ We believe the trial judge did not abuse her discretion in refusing to allow this testimony into evidence. Rule 15.2(c), Arizona Rules of Criminal Procedure, 17 A.R.S., provides that simultaneously with the notice of defenses submitted under Rule 15.2(b), the defendant is to make available to the prosecutor the names and addresses of witnesses, other than the defendant, whom he intends to call at the time of trial. Rule 15.6 makes this a continuing obligation. Although the possibility of Mr. Messing's testimony was known early, he had advised the trial court and the prosecutor that he would only testify about the Aletha Mays incident. It was in mid-trial that the prosecutor first learned of the arranged encounter and that Mr. Messing was going to testify about it. Rule 15.7 allows the court to impose sanctions for violations of the discovery rule, including the preclusion of a witness's testimony. While it has been held that the sanction of preclusion should only be applied in those cases where other less stringent sanctions are not appropriate to effect the ends of justice, *State v. Fierro,*

124 Ariz. 182, 603 P.2d 74 (1979); *State v. Smith,* 123 Ariz. 243, 599 P.2d 199 (1979), we do not believe that the ends of justice were violated by preclusion in this case. The trial court was justifiably upset by Mr. Messing's conduct, in violation of the court's order. The record shows that this violation was especially aggravated by the fact that while Mr. Messing secured the victim's addresses from the prosecutor, he had promised not to contact them. The trial court did not err in prohibiting Mr. Messing's testimony.

■ A.R.S. Sec. 13–708 provides:

"If multiple sentences of imprisonment are imposed on a person at the same time . . . the sentence or sentences imposed by the court shall run concurrently unless the court expressly directs otherwise, *in which case the court shall set forth on the record the reason for its sentence.*" (Emphasis added)

At sentencing the defendant implored the court to impose concurrent sentences. The prosecution asked the court to impose consecutive sentences, arguing that if such were not done, the court would, in effect, be giving the defendant one free crime.

The trial court, in explaining the consecutive sentence, stated:

"I find it a very difficult matter to sentence somebody to this length of time. However, I feel that the legislature and the public require that I give a sentence of this type. It could be longer. There are many elements in which the court could have found aggravation and could have made this a lengther (sic) time. However, your age and those years I feel are satisfactory to assure society's protection and to show that this type of crime does warrant and does merit and does get a definitely long penalty for a defendant who engages in this kind of conduct."

It is evident that the trial court imposed consecutive sentences (1) because of the type of crime involved; (2) in order to protect society, and (3) to demonstrate the community's feelings towards this type of conduct. While appellant may not agree with the reasons that were given by the

trial court, they are in compliance with A.R.S. Sec. 13–708.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.