799 P.2d 333

STATE of Arizona, Appellee,

v.

Robert Charles COMER, Appellant.

No. CR–88–0136–AP.

Supreme Court of Arizona,
En Banc.

July 31, 1990.

Reconsideration Denied
Nov. 14, 1990.

415

Robert K. Corbin, Atty. Gen., Jessica Gif-
ford Funkhouser, Chief Counsel, Crim. Div.

by Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

## OPINION

JOE W. CONTRERAS, Court of Appeals Judge.

## JURISDICTION

Following a jury trial, appellant Robert Charles Comer was convicted of 1 count of first degree murder, 3 counts of armed robbery, 2 counts of aggravated assault, 2 counts of kidnapping, 2 counts of sexual abuse and 3 counts of sexual assault. Appellant was sentenced to death for the murder and to aggravated, consecutive terms of imprisonment on the remaining counts, resulting in a sentence of imprisonment totaling 339 years. The murder conviction and sentence of death are here on automatic appeal, Arizona Rules of Criminal Procedure 31.2(b). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031 and –4033.

## ISSUES PRESENTED

Appellant raises the following issues for our review:

1) Whether the trial court erred by refusing to sever the Pritchard charges from the Jane Jones/Richard Smith charges.[1]

2) Whether the trial court erred by denying appellant's motion for judgment of acquittal on the armed robbery and felony murder charges.

3) Whether the jury instruction on robbery constituted fundamental error.

4) Whether the trial court erred by failing to instruct the jury on reckless second degree murder, manslaughter, and negligent homicide.

5) Whether the trial court erred by denying appellant's motion to dismiss counts

XII (sexual abuse) and XIII (sexual assault) for lack of venue.

6) Whether the trial court erred by refusing to strike two jurors for cause because of their exposure to pretrial publicity.

7) Whether the prosecutor engaged in misconduct in his closing argument.

8) Whether Arizona's death penalty sentencing scheme is unconstitutional.

9) Whether the trial court erred by finding as aggravating circumstances that the murder was committed for pecuniary gain and in an especially heinous and depraved manner.

10) Whether the enhanced sentences on Counts III–XI were based on invalid prior convictions.

## FACTS

In mid-January, 1987, appellant, Robert Comer, his companion, Juneva Willis, and Willis' two children left Sacramento, California, with less than $500.00. They traveled through several states before arriving at the Burnt Corral campground at Apache Lake on February 2, 1987. When the couple arrived at the campground, they had no money.

The following evening appellant invited Larry Pritchard, who was camping nearby, to dinner at appellant's campsite. Pritchard was a large man who, because of a physical disability, stood, sat and walked with considerable difficulty. After dinner, appellant told Juvena Willis, "I'm going to blow him [Pritchard] away." At approximately 9:00 p.m., appellant shot Pritchard in the head with a .38 revolver. Following the shooting, appellant forced Willis to look at the body and said, "See what I've done, I'm a cold and callous killer." It was unclear whether Pritchard died immediately from the gunshot wound. Later, appellant stabbed Pritchard in the neck.

---

1. We will use fictitious names for the two living victims involved in this case, i.e. Jane Jones and Richard Smith. This is in accordance with our policy of October 24, 1989, in which the Chief Justice advised all appellate judges "to avoid, where possible, referring by name in appellate opinions to individual victims or witnesses who are minors or victims of crimes, where naming them would cause them danger or unnecessary embarrassment. Referring by name should occur only where it is absolutely necessary for clarity." See State v. Bartlett, 792 P.2d 692, 693 n. 1 (1990).

Nearby campers, including the camp host Marquis Boltz, heard the gunshot. Within ten minutes after the shooting, Boltz went to the campsite and issued a citation to appellant for discharging a firearm in the campgrounds. Appellant admitted to Boltz that he fired the gun but Boltz was unaware that appellant shot and then stabbed Pritchard.

Before leaving the campsite, appellant went through Pritchard's pockets and took Pritchard's Emergency Medical Technician (EMT) badge. Willis hid the body by covering it with wood. Appellant and Willis then packed up their camp gear and drove to Pritchard's campsite. Appellant took a camera, fishing equipment, maps, a hunting knife belonging to Pritchard and Pritchard's beagle puppy. He attempted to take gasoline from Pritchard's car, but the tank was empty. Appellant also searched for money, but found none. Appellant then drove off "to think". After parking and thinking for about an hour, appellant and Willis drove to the Jones/Smith campsite.

Earlier that day, appellant had met Jane Jones and Richard Smith who were also camping in the area. Appellant knew that they had a small amount of marijuana. Posing as "Arizona Drug Enforcement" officers, appellant and Willis ordered Jones and Smith at gunpoint to come out of their tent and lie on the ground. Appellant briefly flashed Pritchard's EMT badge to substantiate his story that he was on official police business and asked them where they kept the marijuana. Appellant "arrested" the couple and bound them with wire and duct tape. He then searched their tent and took some marijuana, a small sum of money and other personal items.

Appellant placed the couple in their truck and drove away. Willis followed in appellant's truck. After driving a short time, appellant stopped, spoke to Willis, and continued driving. Willis did not follow. Later, Jane Jones asked appellant to stop so she could relieve herself. Appellant stopped, cut the tape binding Jones' feet and took her into the woods. After Jones relieved herself, appellant sexually abused her. When appellant and Jones returned to

the truck, appellant tied Smith to the front bumper of the truck and laid Jones next to Smith. Appellant then forced Jones to engage in oral sexual contact and then proceeded to have vaginal sexual intercourse with her.

After the assaults, appellant threatened to kill Smith, but Jones talked him out of it. Appellant left Smith bound in the woods and drove off with Jones in the couple's truck. Shortly thereafter, when the truck became stuck in a ditch, appellant abandoned the vehicle, and he and Jones walked back to appellant's truck where Willis was waiting.

Appellant drove his truck through the night with Willis, Jones and the two children and eventually ended up on El Oso Mine Road in Gila County. At one point, appellant stopped the truck, pulled Pritchard's dog out of the truck, and shot and killed it. He then warned Jones that he would shoot her if she tried to escape. Appellant continued driving on El Oso Mine Road until he stopped a second time. At a second stop, appellant placed a sleeping bag on the ground and sexually abused Jones by pulling hard on her genitals.

Appellant continued driving and stopped a third time when the truck ran out of gas. He directed Willis and the children to remove the camping gear from the truck. He then took Jones into the woods and engaged in sexual intercourse with her. Meanwhile, Smith freed himself, walked back to the Burnt Corral campground and subsequently reported the incident to the Department of Public Safety.

Jones managed to run away while appellant was busy with the truck. On the morning of February 5th, she was picked up on the highway by a passing motorist and taken to the sheriff's office. Appellant and Willis were apprehended that afternoon without incident. The police found Pritchard's EMT badge buried in the sand and appellant's .38 revolver at the scene of the arrests.

Appellant and Willis were charged in Maricopa County with first degree murder and armed robbery of Pritchard and armed robbery, kidnapping and aggravated as-

**418**

sault of Jones and Smith. In addition, appellant was charged with two counts of sexual abuse and three counts of sexual assault of Jones. The case against Willis was remanded to the grand jury for a redetermination of probable cause. The second indictment did not charge Willis with the murder of Pritchard. Willis subsequently pled guilty to one count of kidnapping, a dangerous offense. As part of the plea agreement she agreed to testify against appellant. The other charges against Willis were dismissed.

The jury found appellant guilty on all counts. Appellant was sentenced to death for the murder of Pritchard and to aggravated, consecutive terms of imprisonment for the other offenses. The trial judge found as aggravating circumstances for imposing the death penalty that appellant previously had been convicted of two felonies involving the use or threat of violence, that the murder for which he stood convicted was committed in expectation of pecuniary gain and that it was committed in an especially heinous and depraved manner. The trial judge found no mitigating circumstances.

## SEVERANCE OF COUNTS

Appellant argues that the trial court erred by failing to grant his motion to sever the trial of the Pritchard counts (Counts I and II) from trial of the Jones/Smith counts (Counts III–XIII). Appellant asserts that Counts I and II were not properly joined with Counts III through XIII because the Pritchard offenses and the Jones/Smith offenses were not connected in their commission or as part of a common scheme or plan.

■ To succeed on his argument, appellant must show a clear abuse of discretion with respect to the trial court's decision to deny the motion to sever offenses. *State v. Day,* 148 Ariz. 490, 493, 715 P.2d 743, 746 (1986); *State v. Roper,* 140 Ariz. 459, 461, 682 P.2d 464, 466 (App.1984). Offenses may be joined if they: (1) are of the same or similar character; (2) are based on the same conduct or are otherwise connected together in their commission; or (3) are

alleged to have been a part of a common scheme or plan. Rule 13.3(a), Ariz.R. Crim.P., 17 A.R.S. We have permitted joinder of offenses in a single trial where the offenses arose out of a series of connected acts, and the offenses were provable by much the same evidence. *See State v. Martinez–Villareal,* 145 Ariz. 441, 446, 702 P.2d 670, 675, *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985) (where the evidence of the burglary was entwined with the homicides the offenses were properly consolidated); *State v. Gretzler (Gretzler I),* 126 Ariz. 60, 73, 612 P.2d 1023, 1036 (1980) (offenses arising out of defendant's effort to leave Tucson without police detection were properly consolidated).

■ Initially, we agree with appellant's assertion that merely because the offenses were committed on the same day is an insufficient connection to justify their joinder. *See State v. Stago,* 82 Ariz. 285, 287, 312 P.2d 160, 162 (1957); *State v. Curiel,* 130 Ariz. 176, 184, 634 P.2d 988, 996 (App.1981). In this case, however, the Pritchard offenses and Jones/Smith offenses share more than temporal proximity. Contrary to appellant's assertion, the record demonstrates that the two sets of offenses were part of a connected series of events which shared the common purpose of obtaining money and supplies.

The evidence in this case clearly illustrates the connections between the Pritchard offenses and the Jones/Smith offenses. Approximately two weeks before the crimes were committed, appellant and Willis left California with a small amount of cash. Two or three days before arriving at the Burnt Corral campground, appellant stopped at the Orange Peel campground and stole food and liquor. By the time the couple arrived at the Burnt Corral campground, they had no money. On February 3rd, appellant met Larry Pritchard. On the same day, he also met Jones and Smith. That evening, appellant shot Pritchard and went to his campsite in search of money and supplies. Finding no money or other useful supplies, appellant, within a short time span, turned his attention to Jones

and Smith. Appellant, armed with the same .38 revolver used to kill Pritchard, "arrested" the couple and used Pritchard's EMT badge to convince Jones and Smith that he was a police officer. He then proceeded to search the couple's personal belongings in his continuing effort to obtain money and supplies. At the arrest scene, the police found appellant's .38 revolver and Pritchard's EMT badge, which had been buried.

The evidence clearly indicates the murder/armed robbery offenses against Larry Pritchard and the aggravated assault/kidnapping/armed robbery/sexual assault and abuse crimes against Jane Jones and Richard Smith were part of appellant's continuing effort to obtain money and supplies. We conclude that the Pritchard charges and the Jones/Smith charges were connected together in their commission and were part of a common scheme or plan. Thus, the Pritchard offenses and the Jones/Smith offenses were properly joined pursuant to Rule 13.3(a)(2) and (3), Arizona Rules of Criminal Procedure.

Appellant next asserts that severance of the Jones/Smith offenses from the Pritchard offenses was necessary under Rule 13.-4(a), Arizona Rules of Criminal Procedure, "to promote a fair determination of the guilt or innocence of any defendant of any offense...." He argues that there was a possibility that the jury inferred a criminal disposition from the evidence on one set of offenses or cumulated the evidence of guilt.

The defendant in *Martinez–Villareal* made a similar argument of prejudice. In that case, the court found no prejudice because the jury was properly instructed to consider each offense separately and was advised that the state had to prove each offense beyond a reasonable doubt. *Martinez–Villareal*, 145 Ariz. at 446, 702 P.2d at 675. In the present case, the trial court instructed the jury to consider each individual count with the evidence presented. In addition, the evidence was separate and distinct for each count. Therefore, the possibility that the jury confused the evidence

on the Pritchard charges with the Jones/Smith charges was minimal.

 Finally, appellant argues that, had the Pritchard counts been severed from the Jones/Smith counts, he would have testified in the murder case. Where joinder of counts is proper, the fifth amendment is not violated by the fact that the defendant must elect to testify on all or none of the counts. *State v. Frederick*, 129 Ariz. 269, 271, 630 P.2d 565, 567 (App. 1981). Severance may be required when a defendant is prejudiced by the election to testify on all or none of the charges. *See Cross v. United States*, 335 F.2d 987, 989 (D.C.Cir.1964). Severance, however, is not automatic when the defendant elects to testify on some counts and remain silent as to the others. *See Baker v. United States*, 401 F.2d 958, 976–77 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970). Before courts will grant a severance, the defendant must make a showing that he has both important testimony to give on some counts and strong reasons for not testifying on others. *Id.; See United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir.1984); *State v. Via*, 146 Ariz. 108, 115, 704 P.2d 238, 245 (1985), *cert. denied*, 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986).

In this case, appellant, through counsel, avowed that he would testify on the Pritchard charges, but that he could not testify on the Jones/Smith charges. Counsel told the trial court that appellant would testify that he never made the statements to Willis, "I'm going to blow him away" and "I'm a cold and callous killer." Additionally, appellant avowed that he would testify that the shooting was not intentional and would explain the circumstances surrounding the shooting. Appellant asserted that he was unable to take the stand in the Jones/Smith trial because he would be forced to either admit to commission of the offenses or take the fifth amendment.

The trial court ruled that appellant had not convincingly demonstrated he had important testimony to give in the Pritchard case. We agree. Appellant did not elaborate on the nature of his testimony on the

**420**

murder charge. The sole reason given for not testifying in the Jones/Smith offenses was that appellant would be forced to either admit or take the fifth amendment in the face of overwhelming evidence of his guilt presented at trial on these counts. Moreover, the sincerity of appellant's avowal that he would testify on the murder charges is questionable in light of the fact that appellant refused to attend any portion of the trial.

We conclude that the Pritchard offenses were properly joined with the Jones/Smith offenses pursuant to Rule 13.3(a)(2) and (3), Arizona Rules of Criminal Procedure, and find that the trial court did not abuse its discretion in refusing to grant the motion to sever offenses.

## ARMED ROBBERY AND FELONY MURDER

■ Appellant moved for dismissal of the armed robbery of Pritchard charge on the ground that insufficient evidence was presented to support the charge. He also moved for dismissal of the felony murder theory, because the armed robbery was the predicate felony underlying the felony murder theory. Appellant claims that the trial court erred in denying these motions.

Robbery is statutorily defined as follows: A person commits robbery if in the course of taking any property of another from his person or immediate presence and against his will, such person threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property.

A.R.S. § 13–1902(A). A "robbery" becomes an "armed robbery" when a deadly weapon or dangerous instrument is used or is threatened to be used in the commission of a robbery. A.R.S. § 13–1904(A). Appellant's primary contention is that robbery, as defined by A.R.S. § 13–1902(A), requires the coexistence of the use of force and the taking of property. He argues that the use of force accompanied with only the intent to deprive the victim of his property is not a robbery. We are not persuaded by this argument.

We previously held that the elements of armed robbery are:

[T]hat defendant (1) while armed with a deadly weapon, (2) took property from another person against that person's will, and (3) in the course of taking the property, defendant threatened or used force against that person with the intent to deprive them of their property. A.R.S. §§ 13–1902, –1904. *Stated otherwise, there must be evidence establishing that defendant's intent to commit robbery was coexistent with his use of force.*

*State v. Lopez,* 158 Ariz. 258, 263, 762 P.2d 545, 550 (1988) (quoting *State v. Wallace,* 151 Ariz. 362, 365, 728 P.2d 232, 235 (1986), *cert. denied,* 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987)) (emphasis added in *Lopez* ). Although we stated in *Lopez* that "[w]hen the use of force and the taking of property are not contemporaneous, there may be a theft, but there is not a robbery," we did not intend to suggest that when a person uses force with the intent to take another's property he has not committed robbery. *Lopez,* 158 Ariz. at 264, 762 P.2d at 551; *See State v. Kinkade,* 147 Ariz. 250, 253–54, 709 P.2d 884, 887–88 (1985) (where the evidence clearly supported a finding that the defendant intended to take the victim's property by the use of force, there was no error in the trial court's refusal to give a theft instruction as a lesser-included offense of armed robbery). We stated further in our discussion in *Lopez:*

Obviously, we are not saying that a defendant immunizes himself from a robbery conviction by killing the victim. *What we are saying is that the robbery statute requires the coexistence of an intent to commit a robbery with the use of force.* If a murder is committed with no intent to commit a robbery, it is still murder but it is not armed robbery. If a theft is conceived of, and executed after a murder, it is a theft but it is not an armed robbery.

*Lopez,* 158 Ariz. at 264, 762 P.2d at 551 (emphasis added).

We decline appellant's invitation to disregard the language in *Lopez* and *Wallace*

because we believe it accurately reflects the requirements of robbery as provided in A.R.S. § 13–1902(A). Certainly, when the actual taking of property is contemporaneous with the use of force, the case for robbery is more clearly established. However, a robbery may also be established when the use of force precedes the actual taking of property, so long as the use of force is accompanied with the intent to take another's property.

■ Appellant also contends that no evidence was presented that the use of force against Pritchard was accompanied by an intent to commit a robbery because the property was taken from Pritchard's campsite after Pritchard's death. In *Wallace* and *Lopez*, we found insufficient evidence to support the armed robbery convictions. In both cases, the evidence showed that property was taken from the victim after the victim was killed. However, the case at bar is distinguishable from *Lopez* and *Wallace*. In *Wallace*, the court found that the defendant did not formulate the intent to take the victim's property until after her death. At the change of plea hearing, the defendant explained that he took the money from the victim's wallet after her death so he could "get drunk". *Wallace*, 151 Ariz. at 366, 728 P.2d at 236. In *Lopez*, the court found that the defendant's intent to take the property was formulated after the killing in an effort to escape and delay detection. *Lopez*, 158 Ariz. at 264, 762 P.2d at 551. In the present case, the only reasonable inference based on the evidence was that appellant shot Pritchard in furtherance of his previously formulated plan to obtain money and supplies.

Contrary to appellant's argument, we find that sufficient evidence supported the armed robbery conviction. When appellant and Willis arrived at the Burnt Corral campground they had no money and were nearly out of gas and food. Appellant's financial condition provided the motive for Pritchard's killing. Appellant went to the Pritchard campsite as soon as practicable following the shooting. Within ten minutes after the shooting, the camp host went over to appellant's campsite and cited him

for firing a weapon in the campground. When the camp host left, appellant and Willis packed up their camp gear and headed for Pritchard's campsite. Evidence also indicated that appellant went through Pritchard's pockets sometime after the shooting, before he went to Pritchard's campsite. The evidence clearly supports the inference that appellant formulated the intent to take Pritchard's property before or at the time of the shooting.

For the foregoing reasons, we conclude that the trial court properly denied appellant's motions for judgment of acquittal of the robbery count and the felony murder theory.

## ROBBERY INSTRUCTION

The trial court gave the following robbery instruction to the jury:

> The crime of robbery requires the proof of the following three things: (1) The defendant took another person's property; and (2) the taking was against the other person's will; and (3) the defendant threatened or used force against any person with the intent to force surrender of the property or to prevent resistance to taking or keeping the property.

Although the instruction is in accordance with Recommended Arizona Jury Instructions Number 19.02, appellant contends that the robbery instruction was improper because it did not include the requirement that the use of force be contemporaneous with the taking.

In view of the preceding discussion of the elements of robbery, we find no error in the robbery instruction.

## FAILURE TO GIVE INSTRUCTIONS ON RECKLESS SECOND DEGREE MURDER, MANSLAUGHTER, AND NEGLIGENT HOMICIDE

■ In addition to instructions on first degree murder, the trial court instructed the jury on intentional and knowing second degree murder pursuant to A.R.S. § 13–1104(A)(1) and (A)(2). The trial court refused to instruct the jury on reckless second degree murder, manslaughter, or

negligent homicide as lesser-included offenses of premeditated murder. Appellant now argues that the trial court erred by refusing to instruct the jury on these offenses.

In capital cases, the trial court is required to instruct the jury on lesser-included offenses of premeditated murder that are supported by the evidence. *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980); *State v. Vickers*, 159 Ariz. 532, 542, 768 P.2d 1177, 1187 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990); *State v. Clabourne*, 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984).

The second degree murder statute provides:

A. A person commits second degree murder if without premeditation:

 . . . .

3. Under circumstances manifesting extreme indifference to human life, such person recklessly engages in conduct which creates a grave risk of death and thereby causes the death of another person.

A.R.S. § 13–1104(A)(3). The evidence presented does not support a reckless second degree murder instruction. Prior to the shooting, appellant told Willis that he was going to "blow Pritchard away". Willis heard the shot, but did not actually see appellant shoot Larry Pritchard. After the shooting, appellant went over to Pritchard and asked, "Larry, are you O.K.?" Appellant then forced Willis to look at Pritchard and declared, "See what I've done, I'm a cold and callous killer."

Contrary to appellant's contentions, Willis' testimony that she thought appellant was joking when he told her he was going to blow Pritchard away does not support a conclusion that the homicide was reckless. The testimony demonstrates Willis' initial disbelief that appellant intended to kill Pritchard. Neither Willis' testimony nor any other evidence in the record indicates appellant acted recklessly with an extreme indifference to human life creating a grave risk of death to another. Accordingly, we find no error in the trial court's refusal to give an instruction on reckless second degree murder.

Moreover, we find no error in the court's refusal to instruct the jury on manslaughter and negligent homicide. No evidence indicates that appellant recklessly caused Pritchard's death or that the killing was committed in the heat of passion or as the result of a quarrel. *See* A.R.S. §§ 13–1102(A) and –1103(A).

## VENUE

■ Appellant next argues that because the evidence showed that one act of sexual abuse (Count XII) and one act of sexual assault (Count XIII) were committed in Gila County, the Maricopa County Superior Court was without jurisdiction to try those counts. Appellant contends that he has a state constitutional right as well as a statutory right to be tried in the county where the sexual offenses were committed. Article 2, Section 24, of the Arizona Constitution provides:

In criminal prosecutions, The accused shall have the right ... to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed,....

A.R.S. § 13–109 relating to venue provides in part:

A. Criminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law.

B. The following special provisions apply:

1. If conduct constituting an element of an offense or a result constituting an element of an offense occurs in two or more counties, trial of the offense may be held in any of the counties concerned;....

"Conduct" is defined as an act, a voluntary bodily movement, accompanied by the requisite intent. A.R.S. § 13–105(1) and (4). The element of the offense that supports a finding of proper venue must be an "act" and not merely a mental state. *See State v. Cox*, 25 Ariz.App. 328, 331–32, 543 P.2d

449, 452–53 (1975) (former A.R.S. § 13–1504(B)). Appellant contends that all of the acts constituting the elements of Count XII (sexual abuse) and Count XIII (sexual assault) occurred in Gila County. We disagree.

Our discussion in *State v. Poland (Poland I)*, 132 Ariz. 269, 645 P.2d 784 (1982), resolves the issue. In *Poland I*, we held that an act of premedition, such as the kidnapping of a victim that occurred in Yavapai County, was a sufficient essential act requisite to the commission of the offense of premeditated first degree murder to establish venue in Yavapai County. 132 Ariz. at 275–76, 645 P.2d at 790–91. In the present case, the offenses are sexual abuse and sexual assault. Two of the elements of both offenses are that the defendant acted intentionally or knowingly and that the sexual acts were committed without the victim's consent. A.R.S. §§ 13–1404 and –1406. The evidence indicates that acts demonstrating lack of the victim's consent, specifically the kidnapping of Jones, occurred in Maricopa County. The record also shows that, in addition to formulating the intent in Maricopa County, appellant committed acts demonstrating his intent, such as the earlier sexual assaults and sexual abuse, in Maricopa County. Moreover, the sexual abuse and sexual assault resulting in Counts XII and XIII were part of the continuous holding of the victim against her will and the repeated series of sexual assaults and abuse that began in Maricopa County. Thus, we conclude that there was conduct constituting two elements of sexual abuse (Count XII) and sexual assault (Count XIII) that occurred in Maricopa County. Therefore, venue was proper in Maricopa County.

### REFUSAL TO STRIKE JURORS

■ Appellant argues that the trial court erred by refusing to strike two jurors for cause because of exposure to prejudicial pretrial publicity. Appellant contends that the court's refusal forced him to use peremptory challenges to remove the two jurors who should have been removed for cause and left him unable to strike two other jurors who had been exposed to pretrial publicity.

At defense counsel's request, the trial judge conducted a separate voir dire of seven jurors who indicated they had heard or read and remembered specific details about the case. One of the potential jurors testified he followed the story in the media and had been asked as part of his job to look for "certain vehicles and certain things" associated with the case. The juror responded to questions about his qualifications as follows:

BY THE COURT:

Q: You indicated that you remember some specific detail of the newspaper or TV accounts of this case. What do you remember specifically?

A: Well, mostly, you know, where they—I followed the story pretty closely because I had worked at the particular time—I was working for Commonwealth Electric and we did a lot of patrol work for the Salt River and they had asked us to be out looking out for certain vehicles and certain things on some of these patrols and so I followed the case pretty close.

I know it was at Apache Lake and he had a couple of hostages or the one woman was hostage.

. . . .

Q: Okay. And I told you before, as you know a person is innocent until proven guilty. Would you be able to put aside the things that you know about the case and listen to the evidence that is presented in court and the arguments of the lawyers and my instructions on the law and still be a fair and impartial juror?

A: Well, it's hard to say. I probably could. I wouldn't be specifically saying yes or no.

Q: What kind of reservations would you have in your own mind about why you don't think you could be fair?

A: Well, after hearing, you know, after remembering a lot of the stuff, I probably figure he is probably guilty.

Q: Do you feel that—do you feel it would be impossible for you to put aside

these feelings that you have knowing that the person is innocent until proven guilty?

Would that be impossible for you based on what you remember?

A: It would be hard.

. . . .

BY THE PROSECUTOR:

Q: You understand that the defendant right now is innocent, don't you, because we haven't put any proof on?

A: Yes.

Q: You understand that, and you understand that it is my burden representing the State of Arizona to prove this man guilty beyond any reasonable doubt. Do you understand that?

A: Yes, sir.

Q: And do you think you would be able to follow the Court's instructions as far as how you are to apply the law to the facts?

A: I believe I could, yes.

Q: Do you think of yourself being a fair person?

A: I believe so.

Q: And do you think regardless of what you have heard, read or seen about this case, that you could listen to the evidence and form your final opinion in this case based upon what the evidence that comes from the witness stand actually is in this case—do you think you could do that?

A: I believe I could.

BY THE COURT:

Q: So you don't think that even though you have read something about it and you remember things, would you be willing to start out from square one and could you give that commitment to all of us to just listen to the evidence?

A: I can always try.

Q: And will you try?

A: Yes.

Appellant challenged a second juror because she paid close attention to media accounts of the crimes, remembered specific details of the crime and discussed the case with a representative of the Forest Service. She testified as follows:

BY THE COURT:

Q: You indicated before that you had some specific recollections of newspaper or TV accounts of this case. Do you remember specifically what you recall?

A: Well, as I recall it was allegedly a man, and I think there was a woman accompanying him and a child. The victims, I think were a man and his girlfriend.

The man was killed and the girl was kidnapped and raped and later let out on the road. I think she was found by hunters, four-wheelers or fishermen or something like that.

I tried to pay big attention to that case because I fish with Arizona Bass and Babes in U.S. Parks and I fish at Apache Lake up at Burnt Corral area and Punkin Center area and also I talked with, I think her name is Eileen something up at the Forest Service because I am the tournament director and I have to procure permits from the Park Service for my club and she and I discussed it.

She showed me the route that this whole scenario was just covered pretty good up there in the Tonto Forest. That's about it.

Q: All right. Let me ask you this: You know a person is presumed innocent until proven guilty?

A: Yes.

Q: And you used the word allegedly and that's what we use in law. Do you think that despite what you may have heard or seen or read, that you could put that aside, those notions or your recollections regarding that and judge the case solely on the evidence as presented in court through the testimony of the witnesses and the exhibits and also the arguments of counsel and my instructions on the law and be fair and impartial?

A: I'm not sure I could.

Q: Okay.

A: Because as I told you, the thing upset me so much that I went and bought myself a gun because I have camped up there by myself several times, you know, and I could remember feeling great relief when, you know, that there was someone

in custody and I guess, to be totally honest, I felt a little safer knowing that somebody had been taken into custody and if that could be construed as I figured they got the guy that did it, so I am not at all sure.

. . . .

Q: What we need to find out is whether or not even though you were relieved at the time that somebody was caught, whether you would be able to again listen to the evidence that is presented in court and treat the defendant as being innocent until proven guilty. Again knowing that he doesn't have to present any evidence at all. Will you have a difficult time doing that? Do you think that you will because of what you read?

A: Not because of what I read or anything, no.

Q: Okay.

A: The only other thing I might add, I did know the guy's name. The name was not—I was not surprised by the name because that is another thing that I paid attention to because I had a student in high school who had the same last name and it is not that common of a name so I was aware of that name.

I paid attention to his name but as far as that goes, I have never been in this situation before but I am a fair person and I think I could sit and listen.

Q: Okay.

A: And listen to the evidence and base it on the evidence, yes. I could do that.

Q: So you would be willing—would you be willing to commit to us that going in, that you go in with an open mind and despite everything that you have read and heard?

A: I think I can.

. . . .

BY DEFENSE COUNSEL:

Q: You indicated that after the police made an arrest in this case you felt greatly relieved.

A: Oh, yeah.

Q: Is that because you came to the opinion that the police had apprehended the person that had committed the crimes?

A: Basically, yes.

Q: And that opinion was reaffirmed in your conversation with the person from the Forest Service?

A: Yes.

BY THE COURT:

Q: Would you put the State to the test though, of proving that the person that they arrested was really the person who did these acts or would you go in feeling that person is the one who did it—in other words guilty until proven innocent or would you be willing to put the State to the test of proof beyond a reasonable doubt?

A: I don't know. It was my feeling that he was caught there on the scene and—

Q: Okay.

A: —to me, you know, they got the guy. In my mind they got the guy.

Q: But could you put that aside. We can't—it's like living in a small town and everybody knows about somebody burglarizing Aunt Jesse's house or whatever, and they caught somebody in the act. That doesn't necessarily mean that the State doesn't have to prove that that happened.

A: I do think the State has to prove it, if that is your question.

I was having a problem following your question at first. I do think the State has to prove it.

Q: If the State doesn't prove it, prove it to your satisfaction that the defendant is guilty, would you be willing to find him not guilty despite what you have read and seen and heard?

A: Oh, yeah.

. . . .

BY DEFENSE COUNSEL:

Q: You are indicating that if you sat through three weeks worth of testimony and you were not satisfied that the State had proved its case beyond a reasonable doubt, you would vote to put my client back out on the street based upon—

A: I guess, yeah. If the State can't prove it.

. . . .

BY THE PROSECUTOR:

Q: You aren't the only person that read and saw something about it and make assumptions. What we are saying is, can you put those assumptions aside now and listen to the evidence and make your decision based upon what is presented to you in the courtroom and not to be swayed by what you may have heard earlier?

See, that is why we want a fair and impartial juror from the State's standpoint and also from the defendant's standpoint.

BY THE COURT:

Q: Are you able to do that, you think?

A: Yes.

■■■■■ A trial court's decision that an individual juror can render a fair and impartial verdict will not be disturbed on appeal absent a clear abuse of discretion. *Clabourne*, 142 Ariz. at 344, 690 P.2d at 63. The fact that a juror has prior knowledge of a case or preconceived notions concerning the defendant's guilt is not a sufficient basis to disqualify a juror. *Id.; State v. Tison*, 129 Ariz. 526, 533, 633 P.2d 335, 342 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). The defendant must show the potential juror is unable to lay aside preconceived notions and render a fair and impartial verdict based on the evidence presented at trial. *See Clabourne*, 142 Ariz. at 344, 690 P.2d at 63. A juror with preconceived notions may be rehabilitated during voir dire if an ability and willingness to be impartial is demonstrated. *Id.; See State v. Clayton*, 109 Ariz. 587, 593–94, 514 P.2d 720, 726–27 (1973).

The record demonstrates that the two challenged jurors were rehabilitated during voir dire. *See Clayton*, 109 Ariz. at 593, 514 P.2d at 726 (no error in court's refusal to strike juror who stated she would "try" to follow the court's instructions on self-defense). Accordingly, we conclude that the trial court did not abuse its discretion by refusing to strike the two jurors for cause.

PROSECUTOR'S CLOSING ARGUMENT

Appellant contends the prosecutor committed reversible error during closing argument by characterizing appellant as a "monster", as "filth", and the "reincarnation of the devil on earth", and by misstating the evidence.

Defense counsel objected to the prosecutor's characterization of appellant as a "monster" in the opening statement on the grounds that the prosecutor was going beyond the scope of opening statement and was arguing the case. The trial court sustained the objection and urged the prosecutor to refrain from using that type of language again in reference to appellant. The prosecutor asked the judge whether he could call appellant a monster in closing argument. The trial court distinguished between opening statement and closing argument and noted that defense counsel's objection was to the use of argument in the opening statement.

In his closing argument, the prosecutor characterized appellant as a "monster" and as "filth". Defense counsel did not object. The prosecutor also referred to appellant as the "reincarnation of the devil." Defense counsel made a timely objection to this characterization. Initially, the trial judge noted the objection and, following another characterization of appellant, overruled the objection.

■■■■■ We initially note that the failure to object to a comment in closing argument constitutes waiver of the right to review unless the comment amounts to fundamental error. *State v. Thomas*, 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). Attorneys, including prosecutors in criminal cases, are given wide latitude in their closing arguments to the jury. *State v. Boag*, 104 Ariz. 362, 366, 453 P.2d 508, 512 (1969). Within the latitude of closing argument counsel may comment on the vicious and inhuman nature of the defendant's acts. *Id.* In so doing, however, counsel may not make arguments which appeal to the passions and fears of the jury. *State*

*v. Mincey,* 115 Ariz. 472, 484, 566 P.2d 273, 285 (1977), *rev'd on other grounds,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). We believe that in this case the prosecutor's name-calling went beyond arguing the vicious nature of appellant's acts and was an appeal to the jury's passion and prejudice. Although the prosecutor's comments exceeded the bounds of appropriate closing argument, we nevertheless conclude the error was harmless beyond a reasonable doubt. In light of the overwhelming evidence of appellant's guilt, it is evident that the prosecutor's comments did not contribute to the verdict. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Anderson,* 110 Ariz. 238, 517 P.2d 508 (1973).

■ Appellant also complains that the prosecutor misstated the evidence in his closing argument. Appellant points out that the prosecutor told the jury that Willis was never charged with the murder of Larry Pritchard and that the prosecutor stated several times that Pritchard was robbed "immediately" after he was shot. Appellant did not object to these statements at trial. Therefore, appellant has waived review of this claim on appeal unless this court finds fundamental error. *See Thomas,* 130 Ariz. at 435, 636 P.2d at 1217. We proceed to discuss and consider these claims.

In closing argument, the prosecutor stated, "Juneva Willis was never charged, is not charged in this case with homicide." The prosecutor also stated "we could never prove or thought we could never prove that [Juneva Willis] had anything to do with the homicide." The record shows that Juneva Willis was charged with the murder of Larry Pritchard in the original indictment. The trial court remanded the case to the grand jury for a redetermination of probable cause. The second indictment did not charge Willis with the murder of Pritchard. Defense counsel offered a copy of the second indictment against Willis into evidence. Although the prosecutor's comment that Willis was never charged with the murder is an incorrect statement of the facts, he

corrected this misstatement when he stated she "is not charged" with the murder.

■ Finally, appellant contends the prosecutor's statements in closing argument that Pritchard was robbed "immediately" after he was killed and that he was robbed at appellant's campsite are misstatements of evidence. The record shows that Pritchard had an EMT badge while he was at the appellant's campsite shortly before the shooting and that appellant took it from him after the shooting. Later, appellant used Pritchard's EMT badge in the Jones/Smith robberies. Given these facts, the prosecutor's comment that Pritchard was robbed "immediately" following the shooting at appellant's campsite may fairly be inferred from the evidence. Accordingly, we find no fundamental error.

## CONSTITUTIONALITY OF ARIZONA'S DEATH PENALTY STATUTE

■ Appellant contends that Arizona's death penalty statute, A.R.S. § 13–703, is unconstitutional because 1) the court, not the jury, determines the existence of aggravating circumstances, and 2) the "especially heinous, cruel or depraved" aggravating circumstance is unconstitutionally vague.

We have previously considered and rejected both of these arguments. *State v. Correll,* 148 Ariz. 468, 483–84, 715 P.2d 721, 736–37 (1986) (finding of aggravating and mitigating circumstances by a jury is not constitutionally required); *State v. Gretzler (Gretzler II),* 135 Ariz. 42, 55, 659 P.2d 1, 14, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) ("heinous, cruel or depraved" factor is not unconstitutionally vague).

Recently, the United States Supreme Court considered and rejected identical challenges to Arizona's death penalty sentencing scheme in *Walton v. Arizona,* —— U.S. ——, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The majority of the Court held that the constitution does not require a jury to determine the existence of aggravating circumstances. *Id.* at 3053–55. The Court also held that the definition given to the

"especially heinous, cruel or depraved" provision by this court is constitutionally sufficient because it gives meaningful guidance to the sentencer. *Id.* at 3055–59.

## INDEPENDENT REVIEW AND APPELLANT'S CHALLENGES TO FINDINGS OF AGGRAVATING CIRCUMSTANCES

■ In capital cases, we have the duty to independently examine the record to determine the existence of aggravating and mitigating circumstances and the propriety of imposing of the death penalty. *Gretzler II*, 135 Ariz. at 57, 659 P.2d at 16; *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

■ The trial court found three aggravating circumstances existed. First, the trial court found that appellant previously was convicted of a felony in the United States involving the use or threat of violence. A.R.S. § 13–703(F)(2). To support the finding, the trial court found that:

> On April 3, 1979, the defendant was convicted in the Superior Court of California, County of Santa Clara, Case No. 71059 of the crimes of Rape by Threats and by Force, a felony under Sec. 261(2), 261(3), and 12022(b) of the California Penal Code, and also of Assault with a Deadly Weapon, a felony under Sec. 245(a) of the California Penal Code.

The state introduced a certified document of appellant's convictions. In addition, a fingerprint expert compared appellant's fingerprints taken when he was arrested in this case with the fingerprints attached to the documents of the California convictions and concluded that the fingerprints on both documents belonged to the same person. We conclude that the evidence supports the trial court's finding that appellant had two prior felony convictions involving the use or threat of violence against another person. We reviewed the statutory definitions of the earlier convictions and conclude that both involved the use or threat of violence upon another person. *See State v. Romanosky*, 162 Ariz. 217, 228, 782 P.2d 693, 704 (1989); *State v.*

*Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983).

■ Second, the trial court found that the murder was committed in expectation of pecuniary gain. A.R.S. § 13–703(F)(5). Appellant contends that this finding is not supported by the evidence. He emphasizes that almost an hour elapsed between the killing and the time the victim's property was taken, the limited value of the property taken and the fact that he destroyed property which might have facilitated the victim's identification.

■ To prove the existence of pecuniary gain as an aggravating factor, the evidence must show the defendant was motivated by an expectation of pecuniary gain. *State v. LaGrand*, 153 Ariz. 21, 35, 734 P.2d 563, 577, *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). The cause of the murder must be the expectation of receiving something of pecuniary value. *Gillies*, 135 Ariz. at 511–12, 662 P.2d at 1018–19. When the murder is part of an overall scheme to obtain something of pecuniary value the finding will be upheld. *See LaGrand*, 153 Ariz. at 36, 734 P.2d at 578; *State v. Poland (Poland II)*, 144 Ariz. 388, 405–06, 698 P.2d 183, 200–01 (1985), *aff'd*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986); *State v. Hensley*, 142 Ariz. 598, 603–04, 691 P.2d 689, 694–95 (1984).

■ In the present case, the evidence clearly demonstrates that the murder was motivated by appellant's need to obtain money and supplies. As we previously noted, appellant was out of money when he met Pritchard at the Burnt Corral campground. Appellant's financial condition coupled with his expectation of finding money or other valuables on Pritchard's body or at his campsite was the impetus behind the shooting. Appellant contends that the finding that the murder was committed with the expectation of pecuniary gain is erroneous because the items taken from Pritchard's campsite were of little or no value. This argument is meritless. The finding of pecuniary gain as an aggravating circumstance is not negated by the fact

that appellant did not actually receive money or other valuables. *See LaGrand*, 153 Ariz. at 36, 734 P.2d at 578. In this case, the murder was committed with the expectation that appellant would find money, gas and other supplies at Pritchard's campsite. The fact that he did not obtain money or property of any substantial value does not negate his original expectation of pecuniary gain.

Finally, the trial court's characterization of the killing as "senseless" does not contradict the finding that the murder was committed in expectation of pecuniary gain. The murder was "senseless" in that it was not necessary to achieve appellant's goal of obtaining money and supplies, not that it was committed without purpose. Accordingly, we concur with the trial court's finding that the murder was committed with the expectation of pecuniary gain.

■ As a third aggravating factor, the trial court found that the murder was committed in an especially heinous and depraved manner. A.R.S. § 13-703(F)(6). Appellant contends this finding is unsupported by the evidence. We disagree.

Heinousness and depravity involve the mental state and attitude of the defendant as reflected in his words and actions. *State v. Ceja*, 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980). In *Gretzler II*, we listed five factors that demonstrate a heinous or depraved state of mind: 1) the apparent relishing of the murder by the killer; 2) the infliction of gratuitous violence on the victim; 3) the mutilation of the victim; 4) the senselessness of the murder; and 5) the helplessness of the victim. *Gretzler II*, 135 Ariz. at 51–53, 659 P.2d at 10–12.

Based upon our review of the record, we conclude that appellant's words and actions demonstrate the killing was heinous and depraved. The record establishes four of the five factors listed above. The record indicates appellant relished the killing. Shortly after the shooting, appellant forced his companion, Juneva Willis, to look at the victim's body and described himself to her as "a cold and callous killer." *See State v. Walton*, 159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989), *aff'd*, —— U.S. ——, 110 S.Ct.

3047, 111 L.Ed.2d 511 (1990) (defendant's statement after the killing that he had "never seen a man pee in his pants before" was evidence of depravity). The evidence also demonstrates that appellant inflicted gratuitous violence on the victim. Appellant told Willis that he had stabbed Pritchard in the throat following the shooting. The autopsy report confirmed that the victim was stabbed in the throat at a time when he was almost dead or already dead. *See Ceja*, 126 Ariz. at 40, 612 P.2d at 496 (kicking victim in the face at a time when the victim was unconscious or dead indicated a depraved state of mind). Depravity is also established by the senselessness of the murder in that it was not necessary to carry out appellant's plan to rob Pritchard. *See Correll*, 148 Ariz. at 481, 715 P.2d at 734. Finally, the victim was helpless. Pritchard suffered from a physical disability that made it difficult for him to walk or stand. *See State v. Zaragoza*, 135 Ariz. 63, 69, 659 P.2d 22, 28, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983). The evidence strongly supports the trial court's finding of depravity.

The trial court found no mitigating circumstances sufficient to call for leniency. Appellant does not challenge this finding on appeal. We independently reviewed the record and do not find any mitigating circumstances sufficient to call for leniency.

## PROPORTIONALITY REVIEW

■ In capital cases, we independently review the sentence to determine whether "the sentences of death are excessive or disproportionate to the penalty imposed in similar cases." *State v. Nash*, 143 Ariz. 392, 406, 694 P.2d 222, 236, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *Richmond*, 114 Ariz. at 196, 560 P.2d at 51.

■ We have considered other Arizona cases in which the defendant was sentenced to death upon a finding of two or more aggravating circumstances and no mitigating circumstances sufficient to call for leniency. *State v. Serna*, 163 Ariz. 260, 787 P.2d 1056 (1990); *State v. LaGrand*,

**430**

153 Ariz. 21, 734 P.2d 563 (1987); *State v. Correll*, 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Martinez–Villareal*, 145 Ariz. 441, 702 P.2d 670 (1985); *State v. Smith*, 131 Ariz. 29, 638 P.2d 696 (1981); *State v. Steelman*, 126 Ariz. 19, 612 P.2d 475, *cert. denied*, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980); *State v. Ceja*, 126 Ariz. 35, 612 P.2d 491 (1980); *State v. Clark*, 126 Ariz. 428, 616 P.2d 888, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). In addition, we have reviewed those cases where we reduced the sentence from death to life imprisonment. *State v. Marlow*, 163 Ariz. 65, 786 P.2d 395 (1989); *State v. Rockwell*, 161 Ariz. 5, 775 P.2d 1069 (1989); *State v. Mauro*, 159 Ariz. 186, 766 P.2d 59 (1988); *State v. Rossi*, 154 Ariz. 245, 741 P.2d 1223 (1987); *State v. Johnson*, 147 Ariz. 395, 710 P.2d 1050 (1985); *State v. McDaniel*, 136 Ariz. 188, 665 P.2d 70 (1983); *State v. Graham*, 135 Ariz. 209, 660 P.2d 460 (1983); *State v. Watson*, 129 Ariz. 60, 628 P.2d 943 (1981); *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979).

In the present case, the murder was committed with the expectation of pecuniary gain and in an especially heinous and depraved manner and appellant had prior convictions for crimes involving the use or threat of violence. In the absence of any mitigating circumstances, we conclude this murder falls above the norm of first degree murders. *See State v. Blazak*, 131 Ariz. 598, 604, 643 P.2d 694, 700, *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Having considered other death penalty cases, we find the penalty imposed in this case proportional to the sentences imposed in other cases. Accordingly, we affirm the penalty of death.

## SENTENCES ON COUNTS III–XI

Appellant was sentenced to aggravated, consecutive terms of imprisonment on Counts II–XIII. The trial court considered Count I to have been committed on a separate occasion from Count II. The sentence imposed on Count II was enhanced by the prior conviction of Count I. The trial court found that Counts III–VIII were committed on the same occasion and enhanced the sentences on these counts with the two prior convictions of Counts I and II. The trial court found that Counts IX–XI were committed on the same occasion and enhanced the sentences on those counts with the prior convictions of Counts I, II and III–VIII. The trial court found that Counts XII and XIII were committed on separate occasions and enhanced the sentences on Count XII with the prior convictions of Counts I, II, III–VIII and IX–XI and enhanced the sentence on Count XIII with the prior convictions of Counts I, II, III–VIII, IX–XI and XII. The trial court imposed the following terms of imprisonment on each count: Count II—28 years; Count III—35 years; Count IV—35 years; Count V—35 years; Count VI—35 years; Count VII—25 years; Count VIII—25 years; Count IX—8 years; Count X—35 years; Count XI—35 years; Count XII—8 years; Count XIII—35 years.

Appellant argues that Counts III through XI were improperly enhanced by the use of Counts I and II as prior felony convictions. He contends that because the convictions in Counts I and II must be reversed, the convictions on these counts cannot be used as prior convictions to enhance Counts III—XI.

Because we have rejected appellant's arguments regarding the asserted invalidity of his convictions on Counts I and II, we find no error in the trial court's use of Counts I and II as prior convictions to enhance the sentences on the remaining counts. Therefore, there is no basis to modify the sentences imposed in Counts III–XI or to remand the counts for resentencing.

## CONCLUSION

We reviewed the entire record for fundamental error as required by A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). We found none. Accordingly, we affirm the convictions and sentences.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

Note: Vice Chief Justice Stanley G. Feldman did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, Judge Joe W. Contreras, Court of Appeals, Division One, was designated to sit in his stead.

CORCORAN, Justice, specially concurring.

I concur with the result reached by the majority, affirming defendant's convictions and sentences. I write separately to discuss the trial court's denial of challenges for cause as to two jurors. *See* rule 18.-4(b), Arizona Rules of Criminal Procedure. Unlike the majority, I conclude that the trial court's rulings were clearly abuses of discretion.[1] I concur, however; I would hold that the error was harmless, because the two jurors were later struck by defendant through the use of peremptory challenges. *See* rule 18.4(c). There is no claim by defendant that *any* of the 12 jurors who found him guilty could not "render a fair and impartial verdict." Rule 18.4(b). He has therefore failed to establish the prejudice required to find reversible error.

In *Wasko v. Frankel,* this court held, in the context of a civil case, that peremptory challenges are a substantial right of a party, and that forcing use of peremptory challenges to strike jurors who should have been stricken for cause denies the party this right. 116 Ariz. 288, 569 P.2d 230 (1977). Therefore, the court rejected Frankel's contention that the trial court's error was harmless because the juror was stricken by the Waskos' use of a peremptory challenge. The error was held to require reversal due to the prejudice caused by compelling a party to waste one peremptory challenge. *Wasko,* 116 Ariz. at 290, 569 P.2d at 232. *See State v. Thompson,* 68 Ariz. 386, 390, 206 P.2d 1037, 1041 (1949) ("The right to peremptorily challenge jurors [in a criminal case] is an absolute right, and when this right is lost or impaired, the statutory conditions and terms setting up an authorized jury are not met"). *Wasko* and *Thompson* were most recently followed by the court of appeals in *State v. Sexton,* 163 Ariz. 301, 787 P.2d 1097 (App.1989), *review denied* Mar. 20, 1990.

Although these cases would appear to require reversal of defendant's conviction in view of what I conclude was error by the trial court, I believe the validity of *Wasko, Thompson,* and *Sexton* has been undermined and they should be overruled. The United States Supreme Court recently upheld Oklahoma's requirement, imposed by case law, that defendants who disagree with trial court rulings on for cause challenges must exercise peremptory challenges to cure such errors, which are only reversible if the defendant exhausts all peremptory challenges and an incompetent juror is forced upon him. *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).

I believe that this court should limit the right to seek reversal when peremptory challenges are exercised, as did Oklahoma. Such a rule guarantees a defendant a fair trial by an impartial jury; a defendant is entitled to no more. I would hold that the trial court erred by failing to strike the challenged jurors for cause, but find the error harmless because the two jurors were struck by use of defendant's peremptory challenges and defendant has failed to show that a biased juror participated in his trial.

---

1. I cannot glean from the record why the trial judge worked so hard to try to rehabilitate and ultimately retain these two prospective jurors who obviously should have been removed. As to the voir dire of these two challenged jurors: I would prefer to have trial judges rely less on attempts to rehabilitate prospective jurors through the use of generic questions regarding "fairness" and "legal presumptions" that beget self-serving answers, and rely more on common sense.